## PAGETT et al. v. CONNECTICUT MUT. LIFE INS. CO.

(Supreme Court, Appellate Division, Third Department. November 14, 1900.)

LIFE INSURANCE—SUICIDE—VERDICT AGAINST EVIDENCE.

A verdict that insured's death was not by suicide is against evidence, he having been found beside a highway, near a house, hanging from a tree, with a halter round his neck, with fresh blood on the ground under him coming from cuts in his right arm, he being left-handed, there being no evidence of a struggle or anything else indicating murder, and there being proof of despondency, want of employment, debt, and family troubles, and declarations indicating a suicidal intent.

Appeal from trial term, Chemung county.

Action by William Pagett and others against the Connecticut Mutual Life Insurance Company. From a judgment on a verdict for plaintiffs, and from an order denying a motion on the minutes for a new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, and MERWIN, JJ.

Herendeen & Mandeville, for appellant.
Francis E. Baldwin, for respondents.

MERWIN, J. The plaintiffs have recovered upon a policy of insurance issued by the defendant on June 6, 1892, upon the life of Edward B. Holden. The policy was made subject to certain conditions attached thereto, and made a part of the contract. Among these there was a statement of the risks not assumed, in each of which cases it was provided the policy should become void. One of these cases was death "by self-destruction, except upon satisfactory proof that the insured was so far insane as to destroy his responsibility therefor." Holden died on September 19, 1897. The defendant, in its answer, alleged that the death was by self-destruction, and that presented the main issue at the trial. There was no claim of insanity. The verdict was, in effect, that the death was not by self-destruction. The appellant claims that this verdict was contrary to the evidence. Holden lived in the city of Elmira. On the morning of September 19th, between 4 and 5 o'clock, he was found hanging by the neck from a limb of a tree on the side of the highway three or four miles westerly from the city. He was suspended by a halter the head stall of which was attached to the limb, and at the end of the strap there was a slipnoose that was around his neck. He was dead, but the body was warm, so that he had not been hanging long. There were six cuts upon the wrist of his right arm, and there were also two cuts upon this arm between the elbow and the shoulder. At the trial it was claimed that the latter cuts severed the cephalic vein. The physician employed by the coroner to examine the body as to the cause of death was the only witness who had, by a personal examination, the means of knowing whether this vein was severed, and he testified that it was not, and I see no good reason for disregarding his evidence. There was some fresh blood on the ground below the arm, which indicated that the man was alive when he was hung. There were no other wounds on

the body. The theory of the plaintiffs seems to be that the hanging was done by some other party or parties after the man was dead or insensible by reason of the wounds. It appears that about noon on Saturday, September 18th, Holden hired a horse and covered buggy to go, as he said, to Polley's, which was a short distance beyond where he was found. This horse and buggy were found on the side of the road a few feet beyond where Holden was, the horse being hitched to a tree, and there was blood to a considerable extent on the cushion at the right-hand end. There were some blood marks elsewhere. The halter used in the hanging was the one Holden had with the rig. There was no evidence upon the ground of any struggle, and the clothing of the man was not disarranged or torn. There was a farm house near by. It was shown that in the afternoon of Saturday he was at or near Millport, a place some miles northerly from Elmira; that he came from that locality in the evening, and was at Elmira about 9 o'clock. From that time to his death his movements are not shown. There is proof of despondency. He was out of permanent employment, was in debt, and had family troubles. His declarations are shown, indicating an intent upon his part to commit suicide. He was 51 years old, by trade a carpenter, and was strong and athletic, and had been in the army. He was seen to be sharpening a pocketknife on Friday or Saturday. He was left-handed, and the cuts upon the right wrist and arm were such as might have been made by him with his knife. If the cephalic vein was not severed, there would not necessarily be any such loss of blood as would prevent his accomplishing the hanging. There is no proof from which it may be properly inferred that the wounds were made by any one else, nor is there any proof that there was any one with Holden at the time. The occurrence was on a public thoroughfare, and near buildings that were occupied. If, as suggested by the trial judge at the close of the evidence, the question practically was whether it was a case of murder or of suicide, it seems to me to be very clear that a conclusion that a murder had been committed would not be justified by the evidence. There is no room for saying that the death was accidental, and it is difficult to avoid the conclusion that it was a case of self-destruction. Without further detail of the evidence, it is, I think, sufficient to say that, after a careful examination of the voluminous record, and of the extended and thorough briefs upon either side, I am of the opinion that the verdict that the death was not by self-destruction is against the weight of the evidence. It follows that a new trial should be granted.

Judgment and order reversed upon the facts, and new trial granted; costs to abide the event. All concur, except SMITH, J., not sitting.