pany wherein he kept his account seems to indicate that he could not have made the loan he professes to have made. We are able to find in this case nothing but that of an attorney who has misappropriated his client's money, and has for six years vigorously contested every effort to compel him to make restitution.

It follows that the respondent must be disbarred.

(120 App. Div. 260)

### WHITE v. PRUDENTIAL INS. CO. OF AMERICA.

(Supreme Court, Appellate Division, First Department. June 14, 1907.)

1. INSURANCE—ACTION ON POLICY—CAUSE OF DEATH—SUICIDE—PRESUMPTION.
   Where the facts and circumstances surrounding the death of insured are as consistent with death from negligence, by accident, or homicide, as by suicide, the presumption of law is against suicide.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, §§ 1663.]

2. TRIAL—DIRECTION OF VERDICT—UNCONTROVERTED EVIDENCE—SUICIDE.
   Where the evidence tends to show that death was self-inflicted, and no other reasonable inference may be drawn from the evidence, it is the duty of the court to direct a verdict upon the theory of death by suicide.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 337.]

3. EVIDENCE—OPINION EVIDENCE—COMPETENCY OF EXPERT EVIDENCE.
   The opinion of an expert witness as to the reason for the presence of illuminating gas in a room, which was purely speculative and not based upon any fact proved in the case, was incompetent.

   Patterson, P. J., dissenting.

Appeal from Trial Term.

Action by Anita B. White against the Prudential Insurance Company of America. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and McLAUGHLIN, SCOTT, LAUGHLIN, and HOUGHTON, JJ.

William Ogden Campbell, for appellant.

Joseph M. Hartfield, for respondent.

LAUGHLIN, J. This is an action on a policy of insurance issued by the defendant on the 16th day of February, 1903, on the life of Louise L. Buxton, by which the defendant agreed to pay the plaintiff $500 on her death, in accordance with the provisions of the policy. Under the head "Provisions" the policy contained a clause as follows:

"Suicide.—If within one year from the date hereof the insured shall die by suicide—whether sane or insane—or in consequence of his (or her) own criminal action the liability of the company shall not exceed the amount of the premiums paid on this policy."

The insured died on the night of the 12th or morning of the 13th day of September, 1903, within one year after the policy was issued, and the company refused to pay the insurance upon the ground that she committed suicide. This was the issue litigated upon the trial. The plaintiff proved the issuance of the policy and the death of the in-

sured. The defendant then showed that the insured rented and lived in a room on the top floor of No. 28 West 115th street; that some time prior to her death she had an operation at St. Luke's Hospital, and thereafter suffered from hemorrhages; that the physician of whom she rented the room, and who attended her in part during her illness, had discharged her "as cured" about two weeks before her death; that about 7 o'clock on the evening of the 12th of September the insured came down stairs to the sitting room of the house with a paper which she asked her landlord to read; that "she appeared greatly excited, her eyes were very glassy in color, * * * her hair was somewhat disheveled, which was unusual with her, and she said nothing; said she was going to look over some papers," and asked the landlord to read the one she gave him, which was poetry in printed form; that at or about 3 o'clock in the afternoon on the 13th of September she was found dead, "lying in a normal position on the bed, with the cover over, just as a person undressed would do"; that the two gas jets in the room were fully turned on, and the room was filled with illuminating gas, which caused her death by asphyxiation. The fact is not expressly shown, but it is to be inferred from the testimony given, that the windows and door were closed. It appears, however, that there was "no plugging around them, or anything of that character," and there was "nothing like a tube running from that gas, or a funnel, or anything of that kind, running from the jet." The bed was in its usual place, which evidently did not bring the head of it under or near the gas jets; for it was shown that "the bed had not been pushed so as to get it under the gas." The landlord, who was a physician and gave the only material testimony with respect to the condition of the room in which the insured was found, testified that "she probably had been dead since early morning or the night before." It was shown that the gas jets "turn no more easily than the ordinary gas jets." There is no evidence that any one entered the room from the time the insured retired until she was found dead, nor is there evidence tending to show that the bed was in a position where she could read, or that she attempted to read after retiring, or of other facts, from which it might be inferred that she fell asleep with the gas burning. The evidence does not explain how the two gas jets were turned on, except upon the theory that it was done by the decedent; nor is there any evidence in the record tending to show that the gas, while turned on in the room, was turned off or otherwise interfered with outside the room or building, by which it might have entered the room after the flames had been extinguished, to justify a finding that the decedent retired and fell asleep with the gas burning, and that in some manner the supply of gas was thereafter shut off, and after the extinguishment of the flames turned on or came on again.

The law indulges in the presumption that a person will not take his own life, and where the facts and circumstances are as consistent with death from negligence, by accident, or homicide, as by suicide, the presumption is against suicide. Germain v. Brooklyn Life Ins. Co., 30 Hun, 535; Goldschmidt v. Mutual Life Ins. Co., 102 N. Y. 486, 7 N. E. 408; Mallory v. Travelers' Ins. Co., 47 N. Y. 52, 7 Am. Rep. 410; Travelers' Insurance Co. v. McConkey, 127 U. S. 667, 8 Sup. Ct. 1360,

32 L. Ed. 308. This is a presumption, however, which yields to evidence tending to show that death was self-inflicted; and, where no other reasonable inference may be drawn from the evidence, it is the duty of the court to direct a verdict upon the theory of death by suicide. Pagett v. Conn. Mutual Life Ins. Co., 55 App. Div. 628, 66 N. Y. Supp. 804; Seybold v. Supreme Tent, 86 App. Div. 195, 83 N. Y. Supp. 149; Johns v. Northwestern Mut. Relief Ass'n, 90 Wis. 332, 63 N. W. 276, 41 L. R. A. 587. In this state of the evidence, without a fact or circumstance tending to show that the gas had been turned off outside the room and turned on again, or that the supply of gas to these open jets had been in any manner interfered with, or that there was any door or window open, or wind or draught which might have extinguished the flames, the plaintiff called a witness in rebuttal, who was a gas engineer, and was permitted to show, over the objection and exception taken by defendant, that the presence of the gas in the room might be accounted for upon the theory that there was a leak in the service that ran from the main to the meter, or a leak in the main, so that the water from the street might have entered the main and stopped the flow of gas, which would have extinguished the flames, and that after the water was drained out of the pipes the gas would have passed along the pipes again and have entered the room, or if the gas main was small and the pressure was poor, and the lateral supply pipes were small, and there was "a gas engine or any other arrangement using gas" in large quantities suddenly, "it would create a vacuum and put the lights out, and as soon as the gas engine had stopped the gas pressure would come on again and fill the house." This expert also ventured the opinion that, if only one gas jet had been turned on, it would have been possible to turn it on accidentally in attempting to extinguish the light; but even he would not hazard the view that this might have occurred as to the two gas jets. We are of opinion that this evidence was both incompetent and prejudicial. It was wholly speculative. There was no proof of the existence of a single fact in this case upon which the theories of the expert were based. The jury would naturally infer that they would be at liberty, in view of this presumption against suicide, and of the reception of this evidence under objection and exception, in indulging in the inference that some one of these conditions, which, in the opinion of the expert, would have accounted for the presence of the gas in the room and have indicated that death was accidental, existed. This error requires a new trial.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.

McLAUGHLIN, HOUGHTON, and SCOTT, JJ., concur. PATTERSON, P. J., dissents.