ELIZABETH MANDI, as Administratrix, etc., of BENNY MANDI, Deceased, Plaintiff, v. METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

Municipal Court of New York, Borough of Queens, First District, May 9, 1932.

*Irving Cook* [*John Finn* of counsel], for the plaintiff.

*Tanner, Sillcocks & Friend* [*Dean Potter* of counsel], for the defendant.

PETTE, J. Three actions are brought to recover upon three industrial policies of life insurance issued by defendant on the life of Benny Mandi, plaintiff's intestate. By stipulation upon the record the actions were tried together. The first is predicated upon policy No. 78118889, issued July 27, 1925, for $400; the second is upon policy No. 79660152, issued December 21, 1925, for $200; and the third is upon policy No. 79660435, also issued December 21, 1925, for $200.

By an amendment to each policy made January 1, 1929, commonly known as the "Double Indemnity Clause," the defendant agreed that "Upon receipt of due proof that the insured * * * has sustained bodily injuries, solely through external, violent and accidental means, resulting, directly and independently of all other causes in the death of the insured within ninety days from the date of such bodily injuries * * * the company will pay in addition to any other sums due under this policy and subject to the provisions of this policy, an accidental death benefit equal to the face amount of insurance then payable at death * * *."

On April 19, 1931, the body of the assured was found in the Newtown creek. On or about April 24, 1931, the widow of the insured filed proofs of death, as required by the terms of each policy. The claimant's statement refers to the medical certificate as to the cause and the date of death. The medical certificate states that the cause of death was drowning; that deceased had disappeared from home January 19, 1931; that the body was badly decomposed, and that it had no marks of violence. The death certificate also gave the cause of death as drowning.

The defendant paid the face amount of each policy to the widow, but refused to pay the double indemnity.

Plaintiff was appointed administratrix of the estate of her husband on July 15, 1931, whereupon these actions were instituted. The sixth paragraph of each complaint alleges that the insured died "from accidental drowning." The fifth paragraph of each answer alleges, upon information and belief, that death "was the result of self-destruction." The amendment rider provides: "No accidental death benefit will be paid if the death of the insured is the result of self-destruction, whether sane or insane, nor if death is caused or contributed to, directly or indirectly, or wholly or partially by disease or by bodily or mental infirmity * * *."

We are to determine whether the death was accidental, or whether Mandi committed suicide, sane or insane. Each of the parties has his own burden, under the pleadings. If there be no affirmative evidence either way, there must be judgment for the plaintiff.

Plaintiff's case was duly established *prima facie*. The eighth

paragraph of each complaint alleges that proofs of death were furnished to the defendant, and this is admitted by the first paragraph of each answer. After introducing the proofs of death as furnished to defendant, plaintiff rested. There is no dispute that death was caused by drowning. There is no direct evidence that Mandi's death was accidental, suicidal or felonious. Defendant concedes that it was not murder. The badly decomposed condition of the body, when found, merely indicates that it must have been in the water for a long time. For the purpose of plaintiff's *prima facie* case, direct proof of accident is lacking. But suicide will not be presumed. Where the cause of death was either accident or suicide, and there is no evidence explaining the cause, the law presumes that the death was accidental. This is the "well-established presumption" of law which supports plaintiff's *prima facie* case. (*Weil* v. *Globe Indemnity Co.*, 179 App. Div. 166; *Mallory* v. *Travelers' Insurance Co.*, 47 N. Y. 52; 8 Couch Ins. § 2230, pp. 7240–7242.) The medical certificate shows that deceased had disappeared from home on January 19, 1931, three months before the body was found. There is a presumption that one who has disappeared has not committed suicide. (8 Couch Ins. § 2230, p. 7243; *Landon* v. *Preferred Acc. Ins. Co. of N. Y.*, 43 App. Div. 487.) In the case just cited it was held that "Death by drowning is a death produced by external and violent means."

The presumption going to the aid of plaintiff's *prima facie* case, it was thus established that the drowning was accidental. The burden then shifted to defendant to show, under its answer, that death was caused by self-destruction. In support of this affirmative defense, it was shown that deceased had been committed to the Central Islip State Hospital, where he had remained from August, 1929, to January, 1930, at which time he was paroled; that he did not live with his wife and children; that he only worked part of the time; that he lived alternately with some friends, the Shins, or alone; that towards the end of 1930 he returned to his family. At that time he received a letter from Bellevue asking him to call for examination, but he did not want to go. About the same time one of his children died. Mr. Shin advised him to go to Bellevue and gave him a quarter for carfare. On the morning of January 9, 1931, he left the Shin home. He went back two days later, and left again on Sunday morning, January eleventh. Mrs. Shin testified that on that morning just before he left he said, " I no go back Central Islip any more, I feel like dead, you don't see me no more, she no come back, said goodbye, no see me no more." She did not see him after that. That then he kissed the Shin children, which he had never done before, and went away. Miss

Anna Shin testified that when Mandi left he said "we would not see him alive any more." But, three days later, while she was going to school, she saw him again and asked him to go over to the house for supper, but he refused saying that they were "good people" and he would not bother them any more, he would not come back. Miss Shin also said that the night before Mandi went away she heard him tell her mother that "we would not see him alive," and "in the morning he said the same thing." On cross-examination the fact was further developed that, although Mandi went away saying that he would not be seen alive any more, yet he was again seen alive three days later. The girl then testified that Mandi had said that he would not go back to her house because he feared that the hospital people were going there looking for him. Further, that Mandi had said that he should have died instead of his little boy; that he would rather die; that he was not in good health, but that he said, "Nothing will happen, it wont be anything wrong."

This was all of the testimony adduced by the defendant upon the question of suicide.

Plainly, those circumstances fall short of establishing the theory of suicide. While circumstantial evidence may be relied upon to overcome the presumption of death by accident, yet the rule is that the evidence must be such as to leave no other reasonable hypothesis than that of suicide, or, in other words, that the facts must exclude every reasonable hypothesis of natural or accidental death. (8 Couch Ins. § 2230, p. 7243, note 45, and § 2231, p. 7252.) It is also held that the presumption against suicide is strong and may not be overthrown, except by evidence that is clear, cogent and convincing. (Id.) The presumption which the law indulges in that a person will not take his own life is so strong that "where the facts and circumstances are as consistent with death from negligence by accident or homicide, as by suicide, the presumption is against suicide." (*White* v. *Prudential Insurance Co.*, 120 App. Div. 260; *Herschkowitz* v. *Mutual Life Ins. Co. of N. Y.*, 93 Misc. 522; *Travellers' Co.* v. *McConkey*, 127 U. S. 661.)

Tested by the above rules, it seems to me that the evidence introduced on behalf of the defense is totally insufficient to overcome the presumption, and raises no question of fact. The material circumstances are not essentially different from those which were present in the drowning case of *Landon* v. *Preferred Acc. Ins. Co. of N. Y.* (*supra*) and *Washburn* v. *National Acc. Society* (10 N. Y. Supp. 366).

The facts in the case at bar are different from those in *Lindblom* v. *Met. Life Ins. Co.* (210 App. Div. 177), in which death was

caused by carbolic poisoning. The element of accident was there supplied by plaintiff's affidavit, whereas in the present case it is established by the presumption of law.

However, defendant, although having moved to dismiss at the close of the plaintiff's case, failed to renew the motion when both sides rested. The failure to do so creates a conclusive presumption that there is a question of fact, defendant thereby having waived any right to have the complaint dismissed as a matter of law. (*Greenspan* v. *Newman*, 37 Misc. 784; *Clements* v. *Beale*, 53 App. Div. 416; *Hopkins* v. *Clark*, 158 N. Y. 299; *McCarthy* v. *Prudential Ins. Co.*, 252 id. 459, 465.)

Upon the whole case, therefore, there will be judgment for plaintiff in each of the three actions for the respective amounts demanded, with interest and costs.