## TRAVELLERS' INSURANCE COMPANY *v.* McCONKEY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF IOWA.

No. 273.   Argued May 2, 1888 — Decided May 14, 1888.

In an action upon a policy of insurance by which the insurer agreed to pay the sum insured to the beneficiary within ninety days after sufficient proof that the insured within the continuance of the policy had sustained bodily injuries, effected through external, violent and accidental means, and that such injuries alone occasioned death within ninety days from their happening, but that no claim should be made when the death or injury was the result of suicide (felonious or otherwise, sane or insane) the burden of proof is on the plaintiff, (subject to the limitation that it is not to be presumed as matter of law that the deceased took his own life or was murdered,) to show that the death was caused by external violence, and by accidental means; and no valid claim can be made under the policy if the insured, either intentionally, or when insane, inflicted upon himself the injuries which caused his death, or if his death was caused by intentional injuries inflicted upon him by some other person.

THE case, as stated by the court, was as follows:

This is a suit upon what is commonly called an accident policy of insurance. There was a verdict and judgment against the insurance company for the sum of $5600 and costs. The case is here upon alleged errors of law committed at the trial to the prejudice of the defendant.

The policy, by its terms, insures the life of George P. Mc-Conkey, in the sum of five thousand dollars, for the term of twelve months, commencing at noon on the 7th of November, 1882; "the said sum insured to be paid to his wife, Sadie P.

McConkey, if surviving, (in event of her prior death, said sum shall be paid to the legal representatives of the insured,) within ninety days after sufficient proof that the insured, at any time within the continuance of this policy, shall have sustained bodily injuries, effected through external, violent, and accidental means, within the intent and meaning of this contract and the conditions hereunto annexed, and such injuries alone shall have occasioned death within ninety days from the happening thereof; or if the insured shall sustain bodily injuries, by means as aforesaid, which shall, independently of all other causes, immediately and wholly disable and prevent him from the prosecution of any and every kind of business pertaining to the occupation under which he is insured, then, on satisfactory proof of such injuries, he shall be indemnified against loss of time thereby, in a sum not exceeding twenty-five dollars per week, for such period of continuous total disability as shall immediately follow the accident and injuries as aforesaid, not exceeding, however, twenty-six consecutive weeks from the time of the happening of such accident."

The policy also contained these provisions:

"Provided always, that this insurance shall not extend to hernia, nor to any bodily injury of which there shall be no external and visible sign, nor to any bodily injury happening directly or indirectly in consequence of disease, nor to any death or disability which may have been caused wholly, in part, or jointly, by bodily infirmities or disease existing prior or subsequent to the date of this contract, or by the taking of poison or contact with poisonous substances, or by any surgical operation or medical or mechanical treatment; nor to any case except where the injury is the proximate and sole cause of the disability or death; and no claim shall be made under this policy when the death or injury may have been caused by duelling, fighting, wrestling, lifting, or by over-exertion, or by suicide (felonious or otherwise, sane or insane), or by sunstroke, freezing, or intentional injuries inflicted by the insured or any other person, or when the death or injury may have happened in consequence of war, riot, or invasion, or of riding or driving races, or of voluntary exposure to unnecessary danger, hazard,

or perilous adventure, or of violating the rules of any company or corporation, or when the death or injury may have happened while the insured was, or in consequence of his having been, under the influence of intoxicating drinks, or while employed in mining, blasting, or wrecking, or in the manufacture, transportation, or use of gunpowder or other explosive substances (unless insured to cover such occupation), or while engaged in or in consequence of any unlawful act; and this insurance shall not be held to extend to disappearances, nor to any case of death or personal injury, unless the claimant under this policy shall establish by direct and positive proof that the said death or personal injury was caused by external violence and accidental means."

The petition setting out the plaintiff's cause of action alleged that the insured, on or about January 2, 1882, "was accidentally shot through the heart by a pistol or gun, loaded with powder and ball, by a person or persons unknown to plaintiff, by reason of which accidental injury said George P. McConkey then and there instantly died, of which accident and death said defendant was duly and legally notified," etc.

The answer denies that the death of the insured was occasioned by bodily injuries effected through external, violent, and accidental means, (or effected through external violence and accidental means,) within the meaning of the contract of insurance. It alleges: 1. That his death was caused by suicide; 2. That it was caused by intentional injuries inflicted either by the insured or by some other person.

As the argument addressed to this court had special reference to the charge to the jury, the following extract from it is given, as showing the general grounds upon which the court below proceeded:

" The plaintiff exhibits the policy in evidence, and gives evidence of the fact that the insured was found dead within the life of the policy, from a pistol shot through the heart. This evidence satisfies the terms of the policy with respect to the fact that the assured came to his death by ' external and violent means,' and the only question is whether the means by which he came to his death were also ' accidental.'

"It is manifest that self-destruction cannot be presumed. So strong is the instinctive love of life in the human breast and so uniform the efforts of men to preserve their existence that suicide cannot be presumed. The plaintiff is therefore entitled to recover unless the defendant has by competent evidence overcome this presumption and satisfied the jury by a preponderance of evidence that the injuries which caused the death of the insured were intentional on his part.

"Neither is murder to be presumed by the jury; crime is never to be presumed; but if the jury find from the evidence that the insured was in fact murdered, the death was an accident as to him the same as if he had been killed by the falling of a house or the derailment of a railway car in which he was a passenger. If the jury find that the injuries of the insured resulting in his death were not intentional on his part the plaintiff has a right to recover.

"But if the jury find that the injuries inflicted upon the assured causing his death, whether by the assured himself or any other person, were intentional on the part of the assured, the plaintiff cannot recover in this action.

"The inquiry, therefore, before the jury is resolved into a question of suicide, because if the insured was murdered the destruction of his life was not intentional on his part.

"The defendant, in its answer, alleges that the death of the insured was caused by suicide.

"The burden of proving this allegation by a preponderance of evidence rests on the defendant. The presumption is that the death was not voluntary; and the defendant, in order to sustain the issue of suicide on his part, must overcome this presumption and satisfy the jury that the death was voluntary."

The court also said: "In order, therefore, to sustain the plea of suicide, the defendant must have given to the jury evidence sufficient to overcome the presumption to which I have referred, and to convince the jury that the injury from which the insured died was voluntary or intentional on his part."

As further illustrating the views of the learned judge who

presided at the trial, it may also be stated that the defendant asked the court to instruct the jury as follows: "The burden of proof is upon the plaintiff to establish, by a preponderance of credible testimony, that the deceased came to his death from injuries (or an injury) effected through external, violent, and accidental means within the intent and meaning of the contract and conditions expressed in the policy." That instruction was given with the following explanation or qualification: "That it does clearly appear from the evidence that the insured came to his death from injuries or an injury effected through violent and external means, and that the presumption is that the means were unintentional on the part of the insured, which the court holds satisfies the contract. This presumed fact is not conclusive, and may be overcome by evidence, if such there is in the case that the injuries were voluntary or intentional."

The defendant also asked the following instructions: "Plaintiff must establish by direct and positive proof that the death was caused by external violence and accidental means, and, failing in this, she will not be entitled to a verdict." "Plaintiff's case must not rest upon mere conjecture, but her proof must be such as to lead directly to the conclusion that the death was effected by accidental means within the meaning of the policy, and unless she have adduced proof of that character your verdict should be for the defendant." These instructions were given with the following qualifications: "The external violence appearing in the fact that the death ensued from a pistol shot through the heart, the presumption is that it was accidental — not intentional — on the part of the assured, which facts, proved and presumed, make out the plaintiff's case, unless the defendant has satisfied the jury by affirmative proof that the means of death were intentional on the part of the insured."

*Mr. B. D. Lee* for plaintiff in error. *Mr. John P. Ellis* was with him on the brief.

*Mr. W. G. Thompson* for defendant in error. *Mr. H. B. Fouke* was with him on the brief.

Mr. Justice Harlan, after stating the case, delivered the opinion of the court.

There is no escape from the conclusion that, under the issue presented by the general denial in the answer, it was incumbent upon the plaintiff to show, from all the evidence, that the death of the insured was the result, not only of external and violent, but of accidental means. The policy provides that the insurance shall not extend to any case of death or personal injury, unless the claimant under the policy establishes, by direct and positive proof, that such death or personal injury was caused by external violence *and* accidental means. Such being the contract, the court must give effect to its provisions according to the fair meaning of the words used, leaning, however, — where the words do not clearly indicate the intention of the parties, — to that interpretation which is most favorable to the insured. *National Bank* v. *Ins. Co.,* 95 U. S. 673; *Western Ins. Co.* v. *Cropper,* 32 Penn. St. 351, 355; *Reynolds* v. *Commerce Fire Ins. Co.,* 47 N. Y. 597, 604; *Anderson* v. *Fitzgerald,* 4 H. L. Cas. 484, 498, 507; *Fowkes* v. *Manchester &c. Life Assurance Ass'n,* 3 B. & S. 917, 925.

The requirement, however, of direct and positive proof, as to certain matters, did not make it necessary to establish the fact and attendant circumstances of death by persons who were actually present when the insured received the injuries which caused his death. The two principal facts to be established were external violence and accidental means, producing death. The first was established when it appeared that death ensued from a pistol shot through the heart of the insured. The evidence on that point was direct and positive; as much so, within the meaning of the policy, as if it had come from one who saw the pistol fired; and the proof, on this point, is none the less direct and positive, because supplemented or strengthened by evidence of a circumstantial character.

Were the means by which the insured came to his death also accidental? If he committed suicide, then the law was for the company, because the policy by its terms did not extend to or cover self-destruction, whether the insured was

at the time sane or insane.    In respect to the issue as to sui-
cide, the court instructed the jury that self-destruction was not
to be presumed.    In *Mallory* v. *Travellers' Ins. Co.*, 47 N. Y.
52, 54, which was a suit upon an accident policy, it appeared
that the death was caused either by accidental injury or by
the suicidal act of the deceased.    "But," the court properly
said, "the presumption is against the latter.    It is contrary to
the general conduct of mankind; it shows gross moral turpi-
tude in a sane person."    Did the court err in saying to the
jury that, upon the issue as to suicide, the law was for the
plaintiff, unless that presumption was overcome by competent
evidence?    This question must be answered in the negative.
The condition that direct and positive proof must be made of
death having been caused by external, violent, and accidental
means, did not deprive the plaintiff, when making such proof,
of the benefit of the rules of law established for the guidance
of courts and juries in the investigation and determination of
facts.

Upon like grounds, we sustain the ruling to the effect that
the jury should not presume, from the mere fact of death, that
the insured was murdered.    The facts were all before the
jury as to the movements of the insured on the evening of his
death, and as to the condition of his body and clothes when
he was found dead, at a late hour of the night, upon the floor
of his office.    While it was not to be presumed, as a matter of
law, that the deceased took his own life, or that he was mur-
dered, the jury were at liberty to draw such inferences in re-
spect to the cause of death as, under the settled rules of evi-
dence, the facts and circumstances justified.

We are, however, of opinion that the instructions to the
jury were radically wrong in one particular.    The policy ex-
pressly provides that no claim shall be made under it where
the death of the insured was caused by "*intentional* injuries,
inflicted by the insured *or any other person.*"    If he was mur-
dered, then his death was caused by intentional injuries in-
flicted by another person.    Nevertheless, the instructions to the
jury were so worded as to convey the idea that if the insured
was murdered, the plaintiff was entitled to recover; in other

Opinion of the Court.

words, even if death was caused wholly by intentional injuries inflicted upon the insured by another person, the means used were "accidental" as to him, and therefore the company was liable. This was error.

Upon the whole case, the court is of opinion that, by the terms of the contract, the burden of proof was upon the plaintiff, under the limitations we have stated, to show, from all the evidence, that the death of the insured was caused by external violence and accidental means; also, that no valid claim can be made under the policy, if the insured, either intentionally or when insane, inflicted upon himself the injuries which caused his death, or if his death was caused by intentional injuries inflicted upon him by some other person.

*The judgment is accordingly reversed, and the cause remanded, with directions to grant a new trial and for further proceedings consistent with this opinion.*