### PROTECTED HOME CIRCLE V. PERRY P. TISCH.

**1. CONSTITUTION AND BY-LAWS OF BENEFICIARY ASSOCIATION.**

Under the charter of the Protected Home Circle, the supreme circle has full authority to enact a constitution and by-laws for the association and to amend the same.

**2. EFFECT OF AMENDMENT AS TO DEATH BY SUICIDE.**

Where the constitution and by-laws of a beneficiary association provide that the same may be altered and amended, and the application for the beneficiary certificate sets forth that the member will comply with all the laws, rules and regulations then in force or that may thereafter be enacted; an amendment to the constitution and by-laws providing that committing suicide by a member, sane or insane, shall avoid the certificate and forfeit all benefits thereunder, is valid, and applies to a certificate issued under such application, previous to such amendment.

HEARD ON ERROR.

A. N. Williams and Perry & Roberts, for plaintiff in error.

A. C. White, for defendant in error, cited:

Angell & Ames Corporations, Secs. 327, 328; Clark Corporations, 459; Bacon Mut. Ben. Soc., Sec. 80; Morawetz Corporations, Sec. 491; Beach Private Corporations, 311, 421; Thompson Corporations, 955, 960; Supreme Lodge Knights of Pythias v. LaMalta, 31 S. W. Rep. 493 [95 Tenn. 157; 30 L. R. A. 838]; Metropolitan Accident Assn. v. Windover, 27 N. E. Rep. 538 [137 Ill. 417, 434]; Dayton & C. Ry. Co. v. Hatch, 12 Re. 501 (1 Disn. 84); Supreme Lodge Knights of Pythias v. Stein, 21 So. Rep. 627 [75 Miss. 107; 37 L. R. A. 775]; Supreme Lodge Knights of Pythias v. Trebbe, 74 Ill. App. 545; Supreme Lodge Knights of Pythias v. McLennan, 49 N. E. Rep. 530 [171 Ill. 417]; Supreme Lodge Knights of Pythias v. Kutscher, 72 Ill. App. 462; Tempel v. Dodge, 32 S. W. Rep. 514 [89 Tex. 69]; Joliffe v. Insurance Co., 39 Wis. 111 [20 Am. Rep. 35]; Farmers' Mut. Ins. Co. v. Bachman, 1 O. S. C. D. 775 (39 Bull 324); Bacon Mut. Ben. Soc., Sec. 51; Commonwealth v. Wetherbee, 105 Mass. 149; Rockhold v. Mutual Ben. Soc., 21 N. E. Rep. 794 [129 Ill. 440; 2 L. R. A. 420]; State v. Standard Life Assn., 38 Ohio St. 281, 288; Bacon Mut. Ben. Soc., Sec. 71; Bauer v. Knights of Pythias, 1 N. E. Rep. 571 [102 Ind. 262]; Starling v. Royal Templars, 66 N. W. Rep. 340 [108 Mich. 440; 62 Am. St. Rep.]; Seiverts v. National Ben. Assn., 64 N. W. Rep. 671 [95 Ia. 710]; Kent v. Mining Co., 78 N. Y. 159, 182; Morrison v. Insurance Co., 18 N. W Rep. 13 [59 Wis. 162]; Becker v. Insurance Co., 12 N. W. Rep. 874 [48 Mich.

610] ; Gaut v. American Legion of Honor, 64 S. W. Rep. 1070 [55 L. R. A. 465] ; Wheeler v. Iron Hall, 68 N. W. Rep. 229 [110 Mich. 437] ; Cox v. Mutual Fire Assn., 3 Atl. Rep. [48 N. J. L. 53] ; Strauss v. Mutual Reserve Fund, 36 S. E. Rep. 352 [126 N. C. 971; 54 L. R. A. 605]; Hale v. Equitable Aid Union, 31 Atl. Rep. 1066 [168 Pa. St. 377]; May Insurance, Sec. 552; Wist v. Grand Lodge Ancient Order of Workmen, 29 Am. St. Rep. 603; Bragaw v. Knights of Honor, 38 S. E. Rep. 905 [128 N. C. 354; 54 L. R. A. 602] ; Rosenberger v. Insurance Co., 87 Pa. St. 207; Bradfield v. Insurance Co., Berryman's Digest, 859; Carnes v. Traveling Men's Assn., 76 N. W. Rep. 683 [106 Ia. 281; 68 Am. St. Rep. 306]; Benton v. Brotherhood Railway Brakemen, 34 N. E. Rep. 939 [146 Ill. 570]; Knights Templar v. Jarman, 104 Fed. Rep. 638 ; Pulford v. Fire Department, 31 Mich. 458; Lane's Appeal, 17 Atl. Rep. 926 [57 Conn. 182; 4 L. R. A. 45; 14 Am. St. Rep. 94].

**COOK, J.**

Nell A. Tisch, wife of defendant in error, became a member of Rockcreed Circle of the Protected Home Circle, August 1, 1894, and died September 10, 1900, by committing suicide ; whether sane or insane does not appear. When she became a member she obtained a benefit certificate for the sum of $1,000 and designated her husband, Perry P. Tisch, as her beneficiary. In the written application which she signed to obtain the benefit certificate she stated :

" I do hereby agree that compliance on my part with all the laws, rules, regulations and requirements now in force or that may hereafter be enacted by the association is the express condition upon which I am to be entitled to participate in the beneficiary fund to the amount named in the constitution and laws of the association."

The Protected Home Circle is a beneficiary association organized under the laws of the state of Pennsylvania. The fifth clause of the charter provides :

" Said corporation shall have power to institute a supreme and such state, district and local circles as may be deemed necessary in accordance with its constitution and law; and also to draft a constitution and laws for their government which shall determine the time, place, and manner of election of officers, their number, names and terms of service; the reception of members, their rights, privileges, obligations, duties, dues, fees, and penalties; the right to control all funds raised for the prosecution of its work in accordance with its laws; to determine the qualifications of its own members and also the right to have and use a common seal."

Under the charter, the original incorporators adopted a constitution

and by-laws. This constitution provided for a supreme circle, which is the legislative and governing body of the corporation; a grand circle which is a state organization, and local circles. The supreme circle is composed of the supreme officers of the corporation and of delegates elected by the grand circle; the grand circle is composed of delegates elected by the local circles, and the local circles are the divisions to which all the membership must belong. The supreme circle meets biennially, and at such meetings does all the legislating for the association, as provided by the fifth clause of the charter shall be done. The membership in 1902 was about fifty thousand and the number and amount of benefit certificates very large.

The first constitution and by-laws were made by the original incorporators soon after obtaining a charter in 1886, and this constitution and by-laws were adopted at the first meeting of the supreme circle, with the amendments at that meeting enacted, as the constitution and by-laws for the government of the supreme circle, grand circle, local circles, and the membership of the society. Ever since the organization began the constitution and by-laws have contained the provision that the same might be altered or amended by the supreme circle in the manner therein directed. The manner of making the alteration or amendment by the supreme circle has been changed at different meetings of the supreme circle.

Three years after the certificate was issued to defendant in error to-wit, in 1897, at its meeting in Detroit, Michigan, the supreme circle for the first time made provision against death by suicide. At that meeting, in accordance with the manner provided in the constitution and by-laws for alterations and amendments, it provided in the constitution as follows:

" The benefit certificate issued to a member shall become void and all benefits thereunder shall be forfeited in case the insured shall die by suicide, felonious or otherwise, sane or insane, or by his own hand sane or insane, provided that in such case there shall be refunded to the beneficiary named in said certificate the amount of all payments made, together with interest thereon at the rate of three per cent. per annum."

Immediately after the death of the member, Nell A. Tisch, proofs of death were filed with the corporation at its home office, which proofs of death showed that she came to her death by suicide. The association denied liability for any sum except the amount of payments made, with interest at three per cent. upon the ground that the proofs showed that the member died by suicide. The beneficiary instituted suit, recovered a judgment for the full amount of the certificate, and this proceeding in error is to reverse the judgment. The

whole contention is upon the amendment respecting suicide. It is practically admitted by plaintiff in error that, if the constitution and laws of the society contained no provision respecting suicide, that the plaintiff should recover, and such we understand is the law of this state, where there is no showing that the assured was sane at the time of the commission of the act.

Defendant in error contends **that the** amendment is **of no** validity as against him, for the reason :

First. The supreme circle had no authority to make the amendment ; that it was not the act of the corporation, and that the corporation alone could make such amendment to the constitution or by-laws, under its charter.

Second. That the corporation could not make such an amendment affecting certificates already issued.

Third. The amendment upon its face does not refer to certificates previously issued.

Fourth. The amendment is unreasonable and against public policy.

The court below held with defendant in error upon the first proposition and instructed the jury that the supreme circle had no authority to make the amendment and that it was therefore invalid.

The theory of defendant in error is that the corporation alone could make the amendment under its charter ; that this association is analogous to an ordinary corporation, and in ordinary corporations the legislative power is lodged in the stockholders; that the membership constitute the stockholders, and that, in order to enact or amend the constitution and by-laws, the membership must act upon the same directly, either in person or by proxy given for that special purpose. This position is wholly untenable. We must look at the whole scheme of the association, as shown by the charter and as developed under the charter. It is a beneficiary association. It was so incorporated. Such associations for many years prior to the issuing of this charter had a generally acknowledged place among the financial and social institutions of the country, all of them having supreme bodies which are the legislative and governing bodies of the society, made up of delegates selected by the members generally at meetings of the subordinate bodies with which the entire membership are connected. The charter of this association recognized this controlling characteristic of the order.

" Said corporation shall have power to institute a supreme, and such state, district and local circles as may be deemed necessary, in accordance with its constitution and law." The membership make their will **known** through their delegates, selected by them, to the supreme

body, as the elector makes his will known through the representative he sends to the general assembly. These fifty thousand members, call them stockholders if you please, could manifest their will in no other way, and in our judgment it was never intended by the power that created the association, by giving it a charter, that they should act in any other way. The cases referred to by counsel for defendant in error are cases in which the supreme governing body delegated its power to legislate to a board of control composed of certain members of the supreme body, instructing 't to form a constitution and by-laws, and make amendments to the ₁me, and the courts held it could not be done for the reason that the supreme body had no authority to delegate to any one the power to legislate, certainly not any more than a legislature could delegate its power to make laws. In our judgment the supreme circle is the corporation in its ultimate power; certainly so for the purpose of making the laws for its government. This is shown by its entire operations from its beginning, and that has much force and effect in determining the original intention. The supreme circle has always controlled and governed the society; made all its laws for all its various branches, supreme, grand and local. This power has never been questioned before, in the state where it was chartered or in any other state or district. The certificate under which plaintiff below made claim emphasizes the fact. The contract made by it, as shown by the certificate, is between the supreme circle of the Protected Home Circle and Nell A. Tisch. Under the constitution the certificate must be so made. If the supreme circle is not the corporation or had not the power to so contract, then he has no claim he can enforce.

But, suppose we were wrong in our position, what right has defendant in error to complain of the exercise of the power to legislate by the supreme council? His rights are no greater than the member whose beneficiary he is under the certificate. When she became a member of the association, by that act she subscribed to and agreed to be bound by all the laws of the association. Furthermore she was presumed to have full knowledge of such laws. Such is the settled law respecting beneficiary associations. They resemble mutual insurance companies in some respects, but the community of interest theory is much stronger. They are not governed by statutory provisions regulating insurance companies; indeed are hardly considered as corporations for profit at all. In Bacon Benefit Societies & Life Insurance, Sec. 81, it is said:

"The by-laws of the society are binding upon all the members and all are conclusively presumed to know them."

The supreme court of Indiana in **Bauer v. Sampson Lodge, 1 N. E. Rep. 571, 574 [102 Ind. 262],** says:

" One who becomes a member of such an organization is chargeable with knowledge of its laws and rules and is bound by them.. He cannot be ignorant of them, nor can he refuse obedience to them unless, indeed, they are illegal or require the performance of acts which the law forbids. By-laws not in themselves illegal and not requiring the performance of acts contrary to law must, therefore, be deemed binding upon all persons who become members." The reason of this rule is that, by becoming a member, one impliedly agrees to be bound by all legal acts of the majority under the compact of the articles of association; and a member cannot question the validity of the by-laws under which he became a member.

In a recent case, Pfister v. Gergwig, 23 N. E. Rep. 1041. 1042 [122 Ind. 567], the supreme court of Indiana said:

" A person who becomes a member of a mutual insurance company assents to the by-laws under which he acquires a membership and he cannot afterwards assail their validity on the ground they were not regularly adopted. * * * One of the duties of a person who becomes a member of a mutual insurance company is to inform himself of its by-laws and he cannot escape their force although he may have no actual knowledge of them. A very strong application of this rule was made in a mutual insurance company case, in which Chief Justice Gibson declared that without such a rule mutual companies could not exist."

When the wife of plaintiff in error became a member of this association and secured the certificate under which defendant in error claims, there was a constitution and by-laws enacted by the supreme circle, which constitution and by-laws provided that the same might be altered and amended by the supreme circle, and we must hold that the court below erred in saying to the jury that the amendment respecting suicide was not properly enacted, and therefore invalid as to defendant in error.

The second and third propositions of the counsel for defendant in error, taken together, involve the question as to whether or not this amendment affects this certificate which was issued prior to the amendment. In the first place it is claimed it is retroactive and affects vested rights.

It must be borne in mind that the constitution and by-laws which were in force at the time the wife became a member and procured this certificate and by which she was bound, contained the provision that the same might be amended. That provision became part of the contract of insurance, to the same extent as if the same had been written in the application or certificate. In Bacon Benefit Societies & Life Insurance, Sec. 91-a, it is said:

Home Circle v. Tisch.

"Generally speaking the same body which can make by-laws has the power to amend or repeal them, subject to the additional restrictions and limitations of the by-laws themselves, as well as those of the articles of association or charter and the implied conditions of being reasonable and not contrary to law. Where the by-laws contained no provision for amendment it was held that a majority of the members could amend and the others by silence might acquiesce. The body of the members at an annual meeting may adopt a rule in the nature of a by-law, which under the delegated power to the directors to make by-laws the latter would not have, even though it seems to impair vested rights. In order to be valid the amendments must be adopted at a legal meeting of the association. The question of vested rights often arises in determining the validity of changes in by-laws. While this question will be considered later, yet we may here say that although generally speaking it is true that no by-law can be amended or repealed so as to affect an existing cause of action or impair vested rights, and although a by-law that will disturb vested rights is unreasonable, yet where the member agrees to obey and conform to subsequently enacted laws as well as those existing at the time, or the by-laws themselves contain provisions for their alteration, a change regularly made and not unfair of itself will be valid and binding although it may seem to impair vested rights."

In Sec. 186 of the same work, it is said:

"It is often the case that after a person becomes a member of a benefit society the laws are changed and it then becomes a question to what extent the original contract is thereby affected. As the laws of every benefit society enter into the contract between it and its member, whether it be so stipulated or not in the certificate, it follows that when the laws provide for their amendment or repeal, and changes are made in the prescribed manner, the alterations are equally binding upon all the members because this is the express agreement of such members and no exceptions can be made."

The learned author in Sec. 186 refers to a case in the supreme court of Indiana, Supreme Lodge Knights of Pythias v. Knight, 20 N. E. Rep. 479, 483 [117 Ind. 489], in which it says:

"The provisions of the established by-laws of an association, such as that with which the assured united are, as appellee's counsel justly affirm, elements of the contract of insurance. They are factors which cannot be disregarded. That they have this effect all who become members of the association must know. A person who enters an association must acquaint himself with its laws, for they contribute to the admeasurement of his rights, his duties and his liabilities. It is not one by-law of which the member must take notice, but he must take notice

of all which affect his rights or interests. Where, as here, there is an express and clear reservation of the right to amend, he is bound to take notice of the existence and effect of that reserved power. The power to enact by-laws is inherent in every corporation as an incident of its existence. This power is a continuous one. No one has a right to presume that by-laws will remain unchanged. Associations and corporations have a right to change their by-laws when the welfare of the corporation or association requires it, and it is not forbidden by the organic law. The power which enacts may alter or repeal. The duly chosen and authorized representatives of the members alone are vested with the power of determining when a change is demanded and with their discretion courts cannot interfere. Were it otherwise, courts would control all benevolent associations, all corporations and all fraternities."

Mr. Bacon supports the text of his work by the citation of numerous authorities, and it seems that little more need be added. Mrs. Tisch lived for three years after this amendment, during all of which time she was a member of the association, was presumed to know of the amendment and made no complaint.

The constitution and by-laws provided that amendments should be made. In her application she consented that she would be governed by changes that might be made after the issuing to her of the certificate, and the beneficiary cannot now be permitted to complain, except the amendment is an abuse of discretion and clearly an unreasonable, and arbitrary invasion of vested rights. What vested rights had she or her beneficiaries at the time of the amendment? Neither of them was a creditor of the association. A certain amount was to be paid to him provided she kept and observed all the laws and regulations of the association. If she became addicted to the habitual use of intoxicants or committed a crime she might be expelled from her local circle and the certificate became void, and after the amendment it became void if she committed suicide. No vested right whatever was affected.

In Stohr v. Musical Fund Soc., 22 Pac. Rep. 1125, 1126 (82 Cal. 557), it is said:

"The term ' vested right ' is often loosely used. In one sense every right is vested. * * * The term, however, is frequently used to designate a right which has become so fixed that it was not subject to be divested without the consent of the owner, as contradistinguished from rights which are subject to be divested without his consent. Now a right, whether it be of such a fixed character or not, must be a right to something; and, when a man talks vaguely of his vested right, it conduces to clearness to ask: 'A vested right to what?' * * * If the plaintiff has any right which is so fixed that it is not subject to change, we think it can only be to the fruits which ripened before the change is

made; in other words, to such sums as become due before the new by-law was adopted."

Upon the same subject see also Bacon Benefit Soc. & Life Ins., Sec. 186, *supra*.

Two cases have been referred to by counsel directly in point. In Supreme Commandery Knights Golden Rule v. Ainsworth, 71 Ala. 436 [46 Am. Rep. 332], the court held:

"Under a contract of life insurance issued by a mutual company conditioned to be subject to any by-laws thereafter to be enacted, the insured is bound by a subsequent by-law forfeiting such policies when the insured should die by his own hand, sane or insane."

Also in Supreme Lodge Knights of Pythias v. LaMalta, 30 L. R. A. 838 [31 S. W. Rep. 493; 95 Tenn. 157], it is held:

"The holder of a benefit certificate who agrees to be bound by all laws of the order 'now in force or that may hereafter be enacted' will be subject to a subsequent rule regularly passed destroying liability on certificates in case of the suicide of their holders."

It is also claimed that the amendment was not intended to apply to certificates previously issued. We do not think so. The language in the amendment is: "The benefit certificate issued to a member shall become void." This language applies as well to certificates issued before as after the amendment and covers both characters of certificates. Furthermore we must arrive at the intent of the supreme circle, from the considerations that must have induced it to enact the amendment. Experience had, no doubt, shown that provision must be made against losses arising from self-destruction. By making it applicable to future certificates, when it had a complete legal right to make it applicable to certificates already issued, would make the action of the supreme circle seem absurd; also if the amendment applied only to certificates issued subsequently to its enactment, there would be a class of members having certificates of greater value than the certificates held by another class; yet each class would be subject to the same assessments and the same duties.

Is the amendment reasonable and not against public policy? The law seems to be so well settled that an insurance company may provide by its policies or certificates against self-destruction by the insured, whether sane or insane, that it is only necessary to call attention to a few of the leading authorities: DeGogorza v. Insurance Co., 65 N. Y. 232; Travelers' Ins. Co. v. McConkey, 127 U. S. 661 [8 S. Ct. Rep. 1360]; Beach Law of Insurance, Secs. 911 and 912, and cases therein cited.

Judgment of court of common pleas reversed for the reasons that the court erred in its charge and that the verdict is manifestly against the evidence.