## MUTUAL LIFE INS. CO. OF NEW YORK, v. GREGG et al. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. SAME. SAME v. SHEEHAN.

Circuit Court of Appeals, Sixth Circuit.
May 7, 1929.

Nos. 5174–5176.

F. J. Wright, of Columbus, Ohio, for Insurance Cos.

Frederick L. Allen, of New York City (Arnold, Wright & Harlor, of Columbus, Ohio, on the brief), for Mutual Life Ins. Co.

Alexander & Green, of New York City (Arnold, Wright & Harlor, of Columbus, Ohio, on the brief), for Equitable Life Assur. Soc.

Robert T. Scott, of Cambridge, Ohio (Scott & Scott and James W. Bell, all of Cambridge, Ohio, on the brief), for appellees.

Before DENISON, MOORMAN, and HICKENLOOPER, Circuit Judges.

DENISON, Circuit Judge. If Gregg, the insured under the life insurance policies sued upon in these three cases (tried together), committed suicide, the policies forbade recovery. Suicide or not was the only issue. The jury found for the plaintiffs. The insurers contend that a verdict should have been directed for them.

The contention depends, first, upon a matter of pleading. The policies provided double indemnity in case of accidental death, and the petitions sought this double recovery. They therefore alleged that the insured was killed by a bullet from his own pistol, held in his own hand and accidentally fired. At the opening of the trial, and perhaps judging that plaintiffs carried the burden to show accident, and therefore must fail, while defendant had the burden of showing suicide, and perhaps might fail, plaintiffs withdrew the claim of accident and for a double liability. There was no formal amendment of the petitions, and at the end of the trial defendant urged that, as the pleadings admitted Gregg died by his own hand, and the plaintiffs disclaimed accident, suicide was the inevitable conclusion. While it is unfortunate that the petitions were not more formally amended so that plaintiffs might avoid this inference, we think counsel's disclaimer of accident should be interpreted as disclaiming and carrying with it the whole of the paragraph in which accident was alleged, and therefore withdrawing the entire allegation that Gregg was killed by his own pistol in his own hand. The literal construction of what was done and what was left undone would amount to a consent by plaintiffs' counsel to adverse judgment, but the more reasonable construction of what they did is as we have

stated. The trial court took this view of the matter; and, since amendment of the pleadings was then and there permissible at the discretion of the court, we do not see that there was any reversible error. The situation is appropriate for the application of section 269 of the Judicial Code (U. S. C. tit. 28, § 391 [28 USCA § 391]).

Defendant's main contention is that suicide was the only legally permissible inference from the undisputed facts. We had occasion in New York Life Ins. Co. v. Ross (C. C. A.) 30 F.(2d) 80, 82, to discuss the effect of the so-called presumption against suicide, and particularly its effect when the initial burden is on plaintiff to show accidental death. Where the issue of accident is not directly involved, but the sole direct issue is suicide or not—upon which issue the insurer carries the burden, both of proceeding with evidence and of satisfying the jury—the insurer must produce evidence reasonably fit to persuade that the death was suicidal; and, having done so, if therein or in plaintiff's proofs there was basis also for the contrary inference, the issue is for the jury; and a reviewing court, under the federal rule, cannot balance the inferences and say that, in its judgment, the inference of suicide is more reasonable, and therefore plaintiff, as a matter of law, must fail.

The question for the reviewing court must be just the same as in any other kind of a lawsuit tried by a jury. Does the evidence, taken in the most favorable light for plaintiff, compel all reasonable men to accept the theory of suicide? If so, a verdict will be directed for defendant; otherwise not; and in this inquiry, as in every other case where the jury may rightfully refuse to accept that theory which is the natural and prima facie correct inference from all the facts, there must be some other theory fairly reconcilable with the admitted facts, and which is reasonably possible rather than merely fantastic. If all the facts indicate suicide, and there is nothing reasonably having a substantial tendency to show that the death might have occurred in any other way, the issue is one of law and not of fact. The cases of Travellers' Ins. Co. v. McConkey, 127 U. S. 661, 8 S. Ct. 1360, 32 L. Ed. 308, in the Supreme Court, and Standard Life & Accident Ins. Co. v. Thornton (C. C. A.) 100 F. 582, 49 L. R. A. 116, in this court, and, so far as we are aware, all well reasoned cases which approve or permit a finding that suicide was not the only permissible conclusion, are cases where, upon the facts shown, there was some other theory of the cause of

death which was fairly possible—in other words, such that the support for that theory would be substantial evidence, and not a mere scintilla. We take this to be the result of the later pertinent cases (see discussion and cases cited in the Ross Case, supra).

In the present case, all the strong lights of the picture show suicide. Gregg had physical and financial worries, which, judged either by quantity or quality, or both, were as great as in many cases where they clearly did furnish a suicidal motive. He was last seen alive at breakfast. His office, in a business building, consisted of an outer or general room and an inner or private room. In the latter, among other things, was a gun case, containing several kinds of guns and pistols belonging to the insured, commonly used—or some of them—in hunting; and there was also a cot made up for occasional use as a bed. There was little other furniture. Gregg's brother, going in about 9 a. m., found him dead, lying at full length on this cot, fully dressed, with his head upon the pillow. His right arm was on the cot, or perhaps had fallen toward the floor, his left arm was lying across his body, his .22 automatic, taken from the gun rack, was lying upon the body, an empty cartridge shell was on the blanket at the side of the body, blood was coming from the mouth, and there was a .22 bullet hole in the roof of the mouth, ranging upward. Neither the room nor the cot showed evidence of disturbance or struggle of any kind. There was no suggestion that there could have been any one else with any possible motive for killing him. It seemed so obvious that he had killed himself that there was no autopsy, no inquest, no public investigation of any kind, and eventually there was an allegation to that effect deliberately made in all these suits, brought in the interest of the policy beneficiaries. It seems to us beyond reasonable dispute that this picture compels a conclusion of suicide, unless there are in it shadows which do more than indicate possible doubts. Suggestions to this effect are that Gregg's worries were not bad enough to be a very strong motive; that he had not been habitually depressed; that the shot might have been fired by some one else; that it might have been fired by him but accidentally; and that death might have been from natural causes. The first two are not inconsistent with the suicidal intent. That some one else fired the shot is a mere possibility, supported by nothing; and, in view of the whole situation, it is hardly entitled to be called a possibility. Plaintiffs' disclaimer of the theory of accident as the basis for

double recovery is not theoretically inconsistent with reliance upon that same theory as sufficient to raise an issue of fact as to suicide, for, theoretically, evidence indicating accident may not be strong enough to support plaintiffs' burden on that issue and yet may be strong enough to prevent a directed verdict on the suicide theory; but these suppositions do not apply to this case. The idea of an accidental explosion of the cartridge, while Gregg was cleaning the pistol or handling it in any other nonsuicidal way, is inconsistent with the outstanding facts. The suggestion of death from natural causes is based wholly on the statement of one of the undertakers that he had seen cases of death from apoplexy when the body looked as this did and which had been followed by some kind of a hemorrhage—what, was not very intelligible—producing as much blood in the mouth as was here found. He did not see or consider the bullet hole in the roof of the mouth, the pistol or the empty shell. There were three undertakers and embalmers. One cleaned out the mouth, found the .22 caliber bullet hole, inserted cotton into the wound, and observed that it ranged upward. No one questioned this; the other two were less specific; one did not observe the wound, and had no occasion to; the other somewhat casually referred to it as an abrasion. In this state of the record, the idea of death from apoplexy has no basis.

Otherwise the doubts suggested as against the suicide theory are only because some of the witnesses, under the casual observation which they say was all they gave, did not notice some of the things—like powder marks in the mouth—which might have existed in a case of suicide. Such imperfections in the proofs of one theory have, by themselves, no force to support another theory.

There was also testimony by a physician, which was offered as expert evidence, although no qualifications appeared which would enable him to give an expert opinion upon the point presented. This witness, in answer to a hypothetical question, probably intended to express the opinion that, if Gregg had put the muzzle of the pistol in his mouth and fired it, the expansion of the gases in the confined mouth space would have injured the mouth tissues and thrown the pistol further away than the waist line. These conclusions so obviously would or might depend upon conditions which were not stated in the hypothetical question, and so lack any persuasive effect upon the issue, that they did not justify submission of that issue to the jury.

The study and review of the question of what is substantial evidence, as well as the comments upon the so-called expert evidence, which were made by us in Hardy-Burlingham Mining Co. v. Baker (C. C. A.) 10 F. (2d) 277, 278, 281, are here applicable.

The judgments in the three cases are reversed, and the cases remanded for new trial.