**MISSOURI STATE LIFE INS. CO. v. ROPER.**

No. 5922.

Circuit Court of Appeals, Fifth Circuit.

Nov. 28, 1930.

Jelks H. Cabaniss and Gerry Cabaniss, both of Birmingham, Ala. (Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, Ala., on the brief), for appellant.

Borden Burr, of Birmingham, Ala. (Benners, Burr, McKamy & Forman, of Birmingham, Ala., on the brief), for appellee.

Before BRYAN and WALKER, Circuit Judges, and HOLMES, District Judge.

BRYAN, Circuit Judge.

This is an action at law on three life insurance policies aggregating $10,000, each of which contained a clause providing for double indemnity in the event the death of the insured should result solely "from bodily injuries effected directly from external, violent and accidental means." There was a verdict and judgment in favor of appellee, who was the wife of the insured and the beneficiary named in the policies, not only for the principal amount represented by the face of the policies, but also for $10,000 provided as double indemnity. Appellant concedes that judgment was properly entered against it for $10,000, the face of the policies, but takes this appeal on the ground that the court erred in refusing to charge the jury at its request that under the evidence no recovery could be had under the double indemnity provision.

It is undisputed that the sole cause of the death of the insured was a gunshot wound. The insured, Grady C. Roper, was a physician employed by the Southern Coal & Coke Company at its plant in Boothton, Ala. At the time of his death, Dr. Roper was living in a house next door to that occupied by Chelsea C. White, who kept the company's commissary. Earl Lee was living in a house also next to White, but on the opposite side from Dr. Roper. Lee testified for appellee that about 11 o'clock on the night of September 15, 1929, Dr. Roper called to him, "Come here quick; Mr. White has shot me;" that as soon as he could dress he went over to White's house, where he found Dr. Roper holding and striking White with his fist; that White had in his hand a short range pistol shotgun; that Dr. Roper seemed to be weak, and had been shot in the abdomen; that there were no signs of White having been struck, and Dr. Roper had no weapon in his hands or about his person, except a small penknife fastened to his watch chain; that he carried Dr. Roper to the hospital in his car; that "Dr. Roper gave no evidence of being drunk. I smelled no liquor on him and he was perfectly sober." With this evidence appellee rested her case. White was called as a witness for appellant, but, as he was then under indictment for the murder of Dr. Roper, refused to testify. By stipulation of counsel, it was agreed that White, had he become a witness, would have testified to the following effect: About 9 o'clock at night a man named Lacey came to my house. He had been drinking heavily, and in a few minutes became unconscious. I called Dr. Roper; he came over and at my request ex-

amined Lacey. Dr. Roper said that Lacey was simply dead drunk, and then asked for a drink of whisky, which I gave to him. Each of us had three drinks according to my recollection. Dr. Roper commenced quarreling with me, claiming I had overcharged him at the commissary. We had words back and forth, and he called me a robber. I then asked him to leave my house, but, instead of doing so, he cursed me and struck me in the face. The blow knocked me back against a table on which was a small four-ten gun. When I fell against the table, I picked up the gun and pointed it toward Dr. Roper and told him if he came any closer to me I would shoot. He continued to advance on me. With the gun pointed at him, I again warned him that, if he came any closer, I would shoot, but he refused to obey my warning, rushed at me, and when he did I pulled the trigger and shot him. Then Dr. Roper struck me again and knocked me down, using his fists. We were still fighting, and he was beating me badly, when Mr. Lee came in and stopped him and took the gun away from me. I did not shoot Dr. Roper until I had my back against the wall and had twice warned him to stop, and that if he did not stop I would shoot. Under the stipulation, appellee was given the right to impeach the statement attributed to White, and witnesses called on her behalf in rebuttal testified that White made statements to the effect that Dr. Roper cursed him but did not strike him or attempt to do so until after he had been shot. There was further rebuttal testimony to the effect that White bore no sign of having been struck in the face, and that there was no indication of chairs having been turned over, furniture disarranged, or of a fight having occurred in White's house; that Dr. Roper's reputation was that of a sober, peaceable citizen; that immediately after the shooting White's manner and appearance was that of a man who had been drinking; and that he had the reputation of being irritable and quarrelsome when drinking. Mrs. Roper testified that she had been absent from home over two months at the time her husband was killed, but when she returned after his death she took up the charge tickets at the commissary and paid the bill, thus indicating that Dr. Roper could not have known whether he had been overcharged at the commissary.

 Appellant admits that White's proposed testimony was so successfully and thoroughly impeached that the jury were justified in rejecting it outright, but contends nevertheless that appellee failed to carry the burden of proof by showing that death of the insured resulted from accidental means. The argument is that the proof stands just as it would if appellant had offered no evidence, and that, when so considered, appellee has not met the burden of proof, because she failed to prove that the insured was not the aggressor in his physical encounter with White. The burden was on appellee to prove that the death of the insured resulted solely from external, violent, and accidental means. That the means of death were external and violent is conclusively shown by the character of the injury. Death was also accidental within the meaning of the policy unless the insured were the aggressor, and as a reasonably prudent man should have anticipated bodily injury resulting in death to himself. Travelers' Life Insurance Co. v. McConkey, 127 U. S. 661, 8 S. Ct. 1360, 32 L. Ed. 308; Occidental Life Insurance Co. v. Holcomb (C. C. A.) 10 F.(2d) 125. Much is said in argument about the presumptions of law against suicide and murder. Neither suicide nor murder will be presumed from the mere fact of a violent death, Travelers' Insurance Co. v. McConkey, supra; and the inference therefore arises that such death was accidental. There is here no question of suicide, and, when appellee rested her case in chief, there was no proof of murder or of an intentional killing by White. Roper's statement or exclamation to Lee that White had shot him was consistent with the theory of accident. The fact that after he was shot Roper struck, or attempted to strike, White forms no basis for an inference that before he was shot Roper was the aggressor, but is consistent with the reasonable belief that he was resenting an unprovoked attempt to take his life, or was trying to prevent White from escaping. White's supposed admission that he intentionally shot the insured, and supposed claim of self-defense, were introduced by appellant, but it was open to the jury to reject all or any part of the testimony attributed to him. Appellant cannot very well rely on a statement which it admits the jury were at liberty to disregard. We are therefore of opinion that a prima facie case for appellee was made out by evidence in chief adduced on her behalf. The jury might well have believed, as they doubtless did, that White intentionally shot the insured, and at the same time have rejected the claim of self-defense. Although the killing was intentional on White's part, it could still have been accidental as to the insured. Moreover, the rebuttal testimony was sufficient to authorize the jury to find that the insured was not the

aggressor. It was open to the jury to find from the evidence as a whole that Dr. Roper went into the home of his next door neighbor White in response to a call for his professional services; that he was a law-abiding citizen, and was sober at the time he was killed; that White was drinking and was quarrelsome when in that condition; and that there was no indication from the appearance of White or the condition of his house that Dr. Roper had been the aggressor in a fight. It is not unreasonable to believe that an unarmed, sober, peaceable, prudent man would not have made or continued an assault upon a drunken, quarrelsome man who was armed with or had at hand a deadly weapon. The conclusion is that it was not error to submit to the jury the question whether the death of the insured was the result of accidental means within the meaning of the policy of insurance.

The judgment is affirmed.