**PROVIDENT LIFE & ACCIDENT INS. CO. v. PEACE, Adm'r.**

No. 23141.   Oct. 8, 1935.

Rehearing Denied Dec. 10, 1935.

Lawrence W. Randolph, for plaintiff in error.

Hugh M. Bland and Houston B. Teehee, for defendant in error.

PER CURIAM. This action was brought in the district court of Craig county, by Ethel Miller against plaintiff in error, as defendant, to recover on a policy of accident insurance issued by plaintiff in error to one Bill Miller, in which policy Ethel Miller was named as beneficiary. On the death of Ethel Miller the action was revived in the defendant in error, A. C. Peace, as administrator for her estate. The cause was tried by a jury. The court, instead of giving instructions and submitting the usual general form of verdict, submitted two interrogatories to the jury, said interrogatories and their answers being as follows:

"Question No. 1. What caused the death of Bill Miller? Answer. Gunshot wound in right breast.

"Question No. 2. Was the shooting of Bill Miller by Lizzie Miller accidental or intentional? Answer. It was accidental."

Upon these answers of the jury to the interrogatories submitted, the court rendered judgment in favor of plaintiff for $1,000, and interest thereon at 6 per cent. from September 4, 1929. Plaintiff in error filed its motion for a new trial and perfected its appeal in the usual manner. The parties herein will be referred to as they stood in the trial court.

The policy of insurance is an ordinary accident and health policy, and provides for payment to the beneficiary in case of death of the insured resulting from bodily injuries sustained solely through external, violent and accidental means, and said policy contains the following clause:

"This policy does not cover injuries, fatal or nonfatal, sustained by the insured: * * * (4) If said fatal or nonfatal injury results from the intentional act of the insured or of any other person, except assault committed on the insured for the sole purpose of burglary or robbery; and assaults incurred by the insured while engaged in the proper performance of the duties of his occupation and provoked solely thereby."

The evidence discloses that the insured was intentionally killed and murdered by his estranged wife, Lizzie Miller. They had quarreled several hours. She requested that they go back together as husband and wife. He refused to consent and she informed him that if he left the house, the undertaker would carry him away. They had been separated several months. He told her he was going to leave and not go back any more and she told him that she was going to kill him. She went to an adjoining room, procured a shotgun and shot him, being within a few feet of him at the time the shot was fired. The insured died a few minutes after he was shot.

At the end of plaintiff's testimony in chief, defendant demurred to plaintiff's evidence, which demurrer was overruled by the court, and at the close of all the testimony defendant requested a directed verdict in its favor, which request was overruled and exception saved. The overruling of the demurrer to the evidence and the refusal of the court to direct a verdict for defendant are assigned as error. There are other assignments which it will not be necessary to consider in view of the conclusions reached on these particular assignments.

The real issue involved in this case has to do with the force and effect of the limitation clause in the policy as above set forth.

The allegation of plaintiff's amended petition with reference to the cause of insured's death is as follows:

"That on the 9th day of June, 1929, the said Bill Miller was killed at Muskogee, Okla., by external, violent and accidental means, to wit: By the discharge of bullets from a shotgun held in the hands of one Lizzie Miller; that the firing of the shots into the body of the deceased was without any provocation on his part, and without his foreknowledge or intentional connivance, and therefore accidental as to the deceased."

The answer to this petition in part alleges:

"Further answering the defendant alleges and states that if the said Bill Miller died or was killed on the 9th day of June, 1929, or on any other date, that such fatal injury and death of the insured resulted from the intentional act of another person and was not such injury as was covered by the provisions of the policy of the insurance issued by the defendant and sued on herein, and such fatal injury was specifically excepted from the terms of said policy by section (d) of Part IV thereof."

In his opening statement to the jury counsel for plaintiff, as a part of said statement, said:

"The beneficiary of that policy was Ethel Miller, and on the 9th day of June, 1929, at a time when this policy was in full force and effect, and when the insurance company was liable to his beneficiary in case of accidental death, or by violent, external and accidental means, Bill Miller's wife, after some argument with him which lasted throughout the night and until about two o'clock in the morning, picked up a single barrel shotgun and killed Bill Miller, and Bill Miller died from this shotgun wound either on the way to the hospital or sometime after he got to the hospital.

"And I think the court will instruct you that such killing by a gunshot wound is, within the meaning of the law, an accidental death, or by means of violent external and accidental means. The death certainly was not intentional on the part of Bill Miller."

It is contended by plaintiff in error that the limitation clause above referred to is binding and enforceable and precludes recovery where the evidence discloses that the injury was sustained from the intentional act of another person and not within the exceptions enumerated in said limitation clause. It is contended by defendant in error that the limitation clause is ambiguous, and that applying the general rule that where the policy is ambiguous it should be construed against the insurer and in favor of the insured, the above limitation clause should therefore not be given force and effect.

Defendant in error cites numerous authorities, particularly Kascoutas v. Federal Life Insurance Co. (Iowa) 185 N. W. 125, 22 A. L. R. 294, and General Accident, Fire & Life Assurance Corp., Ltd., v. Hymes, 77 Okla. 20, 185 P. 1085, 8 A. L. R. 318; in the Kascoutas Case, supra, the limitation clause merely referred to disability and did not refer to fatal injuries or death, and the court construed the clause to be ambiguous as used in that particular policy and not to apply to death loss. In the case of General Accident, Fire & Life Assur. Corp., Ltd., v. Hymes, supra, the assailant killed the insured, intending to kill another party, and the court held that there was no such intentional injury to the assured as to bring the case within the limitation clause of the policy.

This provision of the policy is a usual provision in policies of that nature. The introductory clause provides that the company insures the insured "subject to all conditions and limitations hereinafter contained." The limitation clause is set forth in bold type and is couched in simple straightforward language, the meaning of which is clear. It is susceptible of only one meaning and is not ambiguous.

The general rule with reference to such clauses is stated in 1 Corpus Juris, 442, as follows:

"A provision in the policy that it shall not extend to injuries or death resulting from 'intentional injuries inflicted by the insured or any other person' is valid and binding, and no recovery can be had for injuries or death so inflicted."

In the case of Travelers' Ins. Co. v. McConkey, 127 U. S. 661, 8 S. Ct. 1360, 1363, 32 L. Ed. 308, cited in Nancy A. Jarnagin v. Travelers Protective Association of America, 133 Fed. 892, 68 L. R. A. 499, the court said:

"The policy expressly provides that no claim shall be made under it, where the death of the insured was caused by 'intentional injury inflicted by the insured or any other person.' If he was murdered, then his death was caused by intentional injuries inflicted by another person."

In the Oklahoma case of Union Accident Co. v. Willis, 44 Okla. 578, 145 P. 812, in construing a similar provision in a policy, this court said:

"* * * As a protection against this class of liability, a clause is frequently inserted in policies of accident insurance, specifying that the policy shall not cover injuries fatal or otherwise, intentionally inflicted upon the insured by himself or some other person. Ordinarily, where a policy expressly so provides, it is not necessary that the insured should take part in the intent of such third person, in order to make the exception operative, and relieve the company from its liability. The policy, in such cases, becomes one of limited indemnity as contradistinguished from that of general indemnity."

In that case the defendant failed to plead the special provisions of the policy or to avail itself of said limitation clause as a defense, and the testimony also showed that the blow inflicted, while intentional, was not one ordinarily calculated to cause death, and for these reasons plaintiff was permitted to recover, but this court did not recognize the validity of such clause. In the case now before the court the defendant did plead and offer evidence that the injury came within the exception clause, and plaintiff's own evidence showed that it came within said exception. Lizzie Miller threatened to kill and did intentionally kill the insured, and same was not done in the commission of a burglary or robbery, and the killing was not provoked by the usual occupation of insured. The opening statement, the pleadings, and the proof all show that plaintiff proceeded on the theory that said exception clause was a nullity and not binding on the insured.

In answering interrogatory No. 2, the jury found that the killing of insured by Lizzie Miller was accidental. We fail to see how the jury could arrive at that conclusion. The evidence was not conflicting and there is no evidence whatever to support said finding. Only one witness, Ethel Miller, the beneficiary, testified as to the manner of the death of insured, and her testimony conclusively shows that Lizzie Miller intended to kill insured and did kill him by shooting him with a shotgun, and that both injury and the result of the injury were intentional on her part, and in our opinion the manner of sustaining the fatal injury comes clearly within the provision of the exception clause.

In Johnson et al. v. State Bank of Commerce of Gate, 123 Okla. 127, 252 P. 59, the court, following the rule established in other causes cited therein, holds as follows:

"* * * The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith."

The court further states:

"'The court should direct a verdict where a different verdict will be set aside as contrary to the evidence.' Metropolitan Ry. Co. v. Fonville, 19 Okla. 283, 91 P. 902."

From the foregoing authorities we think clearly that the trial court should have directed a verdict in favor of defendant and that this assignment of error is well taken. It is not necessary to pass on the question as to whether the trial court committed error in overruling the demurrer to plaintiff's evidence. The burden was on defendant to aver and prove that the injury was within the exception. After the matter was called to the trial court's attention by said demurrer, and again by requesting a directed verdict, the evidence not being conflicting and there being no question of fact to be submitted to the jury, it was error to refuse to direct a verdict in favor of defendant. It being apparent that plaintiff could not recover on a second trial, the cause should be disposed of at this time.

The case is, therefore, reversed, with directions to enter judgment for the defendant.

The Supreme Court acknowledges the aid of Attorneys E. B. McMahan, P. J. Morris, and M. A. Holcomb in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. McMahan and approved by Mr. Morris and Mr. Holcomb, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, PHELPS, and GIBSON, JJ., concur.