Clarence R. **LITTLETON**

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY.**

Court of Appeals of Tennessee, Eastern Section.

June 20, 1972.

Certiorari Denied by Supreme Court Nov. 6, 1972.

Sproul & Bailey, Lenoir City, for appellant.

Frantz, McConnell, & Seymour, Wheeler A. Rosenbalm, Knoxville, for appellee.

OPINION

COOPER, Presiding Judge (E. S.)

This is an appeal from a judgment entered in the Circuit Court of Knox County

dismissing the suit brought by Clarence R. Littleton to recover benefits allegedly due under a group accident insurance policy issued by Provident Life and Accident Insurance Company.

The insurance policy, which is the subject of the suit, affords coverage to employees of the State of Tennessee against loss of life "as a result of bodily injuries through external, violent and accidental means." Specifically excluded from coverage under the policy is "any loss, directly or indirectly, wholly or partly, by suicide or intentional self-inflicted injuries, whether sane or insane."

Plaintiff's wife, Mary Rose Littleton, came within the coverage afforded by the policy by virtue of her employment with the East Tennessee Psychiatric Hospital in Knoxville.

Mrs. Littleton died on February 14, 1968, at approximately 2:40 A.M. from a gunshot wound sustained at about 11:00 P.M. on February 13, 1968. The plaintiff contended in the trial court that his wife's death was accidental and that, as the named beneficiary in the policy, he was entitled to the accidental death benefit of $30,000.00 provided in the policy.

The defendant denied Mrs. Littleton's death was accidental, taking the position her death was caused by suicide or intentional self-inflicted injuries.

The trial judge directed a verdict in favor of the defendant at the close of proof on the ground there was no evidence to support plaintiff's theory of accidental death, and that the presumption against suicide, relied upon by the plaintiff, was displaced by evidence that the shooting was inconsistent with accident. This appeal resulted.

In reviewing the action of the trial court in directing a verdict in a case of this nature, " 'the question for the reviewing court must be just the same as in any other kind of a lawsuit tried by a jury. Does the evidence, taken in the most favorable light for plaintiff, compel all reasonable men to accept the theory of suicide? If so, a verdict will be directed for defendant; otherwise not; and in this inquiry, as in every other case where the jury may rightfully refuse to accept that theory which is the natural and prima facie correct inference from all the facts, there must be some other theory fairly reconcilable with the admitted facts, and which is reasonably possible rather than merely fantastic.' " Mutual Life Insurance Company v. Gregg, 6 Cir., 32 F.2d 567, 568, quoted with approval in Provident Life & Accident Ins. Co. v. Prieto, 169 Tenn. 124, 83 S.W.2d 251.

Or stated another way:

" . . . [T]he true rule is that where the reasonable probabilities from all the evidence, in the light of reason and common sense, all point to suicide, and are inconsistent with any other theory, the court should not leave the issue of suicide to the jury, but should decide as a matter of law that the insured committed suicide." Bryan v. Aetna Life Ins. Co., 25 Tenn. App. 496, 160 S.W.2d 423.

The facts are not in material dispute. As background, the evidence shows the plaintiff and Mary Rose Littleton were married in 1959 and had made their home at 503 West Broadway, Lenoir City, Tennessee, for some four years at the time of Mrs. Littleton's death. Plaintiff and Mrs. Littleton had one child, a daughter, ten years of age, named Rose Clarice Littleton, who lived with them. Mrs. Littleton had two daughters by a prior marriage, who lived nearby in the home of Mrs. Littleton's sister.

The plaintiff and Mrs. Littleton were employed as psychiatric aides at the Eastern State Hospital in Knoxville, working the second shift from 3:00 P.M. to 11:00 P.M. On Tuesday, February 13, 1968, plaintiff left his home in Lenoir City between 1:30 and 2:00 P.M. to go to his job at Eastern State Hospital. Mrs. Littleton decided not to go to work and to take a

day of her sick leave, because she was not feeling well and because she needed to perform some household tasks in preparation for the expected hospital confinement of her husband to begin the next morning. Mr. Littleton was going to the hospital to have tests made of his kidneys and lung. According to Mr. Littleton, he had lung surgery in 1959, and medications given him since surgery sometimes affected his kidneys. This was one of those times. Mr. Littleton testified that Mrs. Littleton was not depressed or worried because of the expected hospitalization and tests. She was hospitalized in 1967 for treatment of "a nervous condition," but had shown no signs of nervousness or depression since undergoing treatment.

The record contains a recital of Mrs. Littleton's activities covering the period from 3:00 P.M., when Rose Clarice arrived home from school, to 10:30 P.M., when Rose Clarice went to bed. Nothing in these events, according to the members of Mrs. Littleton's family who testified, was out of the ordinary, nor indicated any unhappiness, worry or despondency on the part of Mrs. Littleton.

Rose Clarice went to bed at approximately 10:30 P.M., leaving her mother alone in the living room watching television. At approximately 11:00 P.M., Rose Clarice got out of bed to go the the bathroom. As she passed the door to her mother's bedroom, her mother called out to her and said, "Rosie, Rosie, call Click, I have shot myself." (Click referred to the Click Funeral Home, which operates an ambulance service.) Rose Clarice testified she went into the bedroom and found her mother, dressed in a gown, housecoat and house shoes, lying across the bed, from side to side, on her back. Mrs. Littleton's feet and legs were draped off the side of the bed, with her feet touching the floor, as if Mrs. Littleton had sat down on the side of the bed and then lain back. A 38-caliber Smith and Wesson revolver, which the plaintiff had owned for a number of

years, was lying on the bed on Mrs. Littleton's left side.

Rose Clarice testified she called the ambulance. She then removed the pistol from the bed, wrapped it in a large handkerchief, and placed it in the drawer of the dresser in her mother's bedroom, where the gun was usually stored.

Mrs. Littleton was taken by ambulance to the Bacon Hospital in Loudon, Tennessee, and then to the University Hospital in Knoxville, where she died undergoing surgery. Cause of death was given as "profound shock from blood loss," resulting from the gunshot wound.

Examination of Mrs. Littleton and her clothing revealed the bullet entered her body at a point in the upper abdomen between her breasts, went straight through the body, passing approximately two to three inches below her heart and exited at a point one and one-fourth to one and one-half inches to the left of the spinal column at the level of the eleventh and twelfth ribs. There was a burned place on Mrs. Littleton's clothing where the bullet entered.

The police officer, who investigated the shooting, found that the bullet which passed through the body of Mrs. Littleton had entered the top of the mattress and had gone through the mattress into the box springs. The bullet hole was located near the center of the mattress, from side to side, but somewhat nearer the headboard.

On examination of the pistol found by Rose Clarice on the bed beside her mother, the officer found the cylinder of the pistol contained one discharged shell, four undischarged shells, and one empty space. The officer searched the premises but found no extra shells or loose ammunition on the premises. Neither did the officer find any gun cleaning materials in the bedroom where the shooting occurred.

The police officer testified the pistol involved in the shooting was in good me-

chanical and operating condition and would not fire, either from a normal or cocked position, unless the trigger was pulled.

Mr. Littleton identified the pistol being the one owned by him for a number of years. According to Mr. Littleton the gun was kept in an unloaded condition in the bottom drawer of the dresser in the bedroom used by him and his wife. Ammunition for the pistol was kept in the dining room of plaintiff's home in a buffet drawer.

Plaintiff theorizes from the above evidence that Mrs. Littleton got the gun to check it—either because of fear of a real or imaginary intruder or because of the fact her husband was going to the hospital the next day and would be absent from the home for several days—and that the gun fired accidentally as she checked it to see if it was loaded. Plaintiff's theory does not account for evidence that shows Mrs. Littleton loaded the gun, nor does it explain the location of the wound in Mrs. Littleton's body, nor the fact that Mrs. Littleton was lying on the bed when shot. It is most improbable that a person would hold a gun perpendicular to her chest, while she looks down the barrel to see if it is loaded. Now as we see the evidence, the uncontroverted facts leave no room for a finding that Mrs. Littleton's death resulted from an accidental discharge of the pistol. To the contrary, we are firmly convinced that the location of the wound, the powder burns on the clothes, the course of the bullet through her body into the mattress, the loading of the pistol by Mrs. Littleton and the acts necessary to fire the pistol are so forceful as evidence as to exclude any reasonable conclusion except that Mrs. Littleton's death resulted from an intentional self-inflicted wound.

Judgment affirmed. Costs incident to the appeal are adjudged against the plaintiff, Clarence R. Littleton, and his surety.

PARROTT and SANDERS, JJ., concur.