JARNAGIN v. TRAVELERS' PROTECTIVE ASS'N OF AMERICA.

(Circuit Court of Appeals, Sixth Circuit. December 12, 1904.)

No. 1,335.

**1. ACCIDENT INSURANCE—INTENTIONAL INJURIES.**
Where it was alleged that insured had been placed under arrest by officers of the law and disarmed, and while so in custody such officers negligently and without lawful excuse permitted certain parties to assault and shoot deceased, and thereby cause his death, such death was caused by "intentional injuries inflicted by another person," within a provision of an accident policy held by deceased exempting the company from liability for such injuries.

**2. SAME—PROXIMATE CAUSE.**
Where it was alleged that deceased died from a shot fired by third persons while deceased was in the custody of officers of the law under arrest, and that his death was caused by the negligence of such officers in failing to protect deceased, the proximate cause of his death was the shot, and not the negligence of the officers in failing to protect him.

Appeal from the Circuit Court of the United States for the Eastern District of Tennessee.

Pickle & Turner, for appellant.
J. H. Frantz (Cornick, Wright & Frantz, of counsel), for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. Jeremiah Jarnagin held a certificate of membership or policy of accident insurance in the Travelers' Protective Association, which provided that the association should not be liable for "death or disability when caused * * * by intentional injuries inflicted by the member or any other person." Jarnagin was murdered while under arrest and in the custody of officers of the law.

¶ 1. Accident insurance, risks and causes of loss, see note to National Acc. Soc. of City of New York v. Dolph, 38 C. C. A. 3.

The declaration averred that the officers "negligently and without law-ful excuse permitted certain parties to assault and shoot, and thereby cause the death of, said Jarnagin." The court below sustained a de-murrer to the declaration on the ground that the cause of death as stated came within the exception of the policy. This is assigned as error. The following is the provision of the policy involved:

"The member hereby agrees that the following rules shall be observed: That the Travelers' Protective Association of America shall not be liable for injuries incurred by a member in occupations more hazardous than specified in his ap-plication for membership; or in case of injuries, fatal or otherwise, wantonly or intentionally inflicted upon himself, while sane or insane, or in case of dis-appearance, or injuries of which there is no visible mark upon the body (the body itself not being deemed such a mark in case of death), or in case of in-jury, disability or death happening to the member while intoxicated, or in consequence of his having been under the influence of any narcotic or intoxi-cant, or death or disability when caused wholly or in part by any bodily or mental infirmity or disease, dueling, fighting, wrestling, war or riot, injury resulting from an altercation or quarrel, unnecessary lifting, voluntary over-exertion (unless in a humane effort to save human life), voluntary or unnec-essary exposure to danger, or to obvious risk of injury, or by intentional in-juries inflicted by the member or any other person, injury received either while avoiding or resisting arrest, while violating the law or violating the ordinary rules of safety of transportation companies, or riding on a locomotive, or to cases of injury caused by the diseases of epilepsy, paralysis, apoplexy, sun-stroke, freezing, orchitis, hernia, fits, lumbago, vertigo, or by sleep walking, voluntary inhalation of any gas or vapor, injury fatal or otherwise, resulting from any poison, or infection, or from anything accidental or otherwise taken, administered, absorbed or inhaled, disease, death or disability resulting from surgical treatment (operation made necessary by the particular injury for which claim is made and occurring within three calendar months from the date of accident excepted)."

The declaration alleged that Jarnagin was "accidentally killed in the manner hereinafter stated," "the special facts and circumstances re-lating to his death" being thus set forth:

"The said Jarnagin had been placed under arrest by certain officers of the law, or deputy sheriffs or police officers, and disarmed, whereby it became in law the duty of said officers to afford adequate protection to him against vio-lence, injury, or death at the hands of others; and while so under arrest, disarmed, and in the custody of said officers, they, the said officers, negligently, and without lawful excuse, permitted certain parties to assault and shoot, and thereby cause the death of, said Jarnagin; that the proximate cause of the death of said Jarnagin was the negligence and fault of said officers, with-out which said death would not and could not have occurred, in failing to afford adequate protection to said Jarnagin, as was their legal duty to do, and that, therefore, the death of said Jarnagin was not the direct result, as the proximate cause of the intentional violence of his assailants, but of the negligence and fault of the said officers."

1. In the case of the Travelers' Insurance Company v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360, 32 L. Ed. 308, the policy of insurance contained a provision that no claim should be made under it where the death of the insured was caused by "intentional injuries inflicted by the insured or any other person." The insurance company claimed that the insured was murdered. The court (Mr. Justice Harlan delivering the opinion) held that, "if he was murdered, then his death was caused by intentional injuries inflicted by another person." In the case of the Travelers' Protective Association v. Langholz, 86 Fed. 60, 29 C. C. A.

628, the declaration averred that the insured was murdered by a person named, "being shot through the head with a Winchester rifle, from which his death resulted immediately." The provision of the policy sued on was identical with that in the case at bar, having been issued by the same company. The court held that the statement of facts agreed on and the finding of the lower court showed the insured "to have been murdered (that is, intentionally injured by another person)," and, following the rule in Insurance Company v. McConkey, directed a judgment for the insurance company. In Brown v. U. S. Casualty Co. (C. C.) 88 Fed. 38, it was held that, where the accident insurance policy provided that the insurance should not cover "death resulting from intentional injuries inflicted by any person," no recovery could be had in case of the murder of the insured. The case of Insurance Co. v. McConkey was followed. To the same effect are the following authorities: 2 May on Ins. § 520a; Hutchcraft's Ex'r v. Travelers' Ins. Co., 87 Ky. 300, 8 S. W. 570, 12 Am. St. Rep. 484.

2. But it is urged that the omission of the officers to protect Jarnagin, the fact that (as alleged) they "negligently, and without lawful excuse, permitted" his murder, takes this case outside the rule in the McConkey Case, because it appears from the declaration that the proximate cause of Jarnagin's death was not the injuries inflicted by his assailants, but the negligence of the officers who failed to protect him from them. If Jarnagin had held a policy insuring him against death caused by intentional injuries inflicted by another, a defense based upon the facts relied on here would seem untenable to the point of absurdity. It would be said: "Suppose he was under arrest, suppose the officers did fail to protect him, still what caused his death was the injuries inflicted by his assailants, and that was precisely what the policy insured him against." The case at bar is essentially the same. In each the question is, "What caused the death?" And the answer must be the same. The shots of his assailants were the direct and proximate cause, and the failure of the officers to protect him was only a condition, which may or may not have contributed to the result. It may have been easier to kill him because of the condition, but it was not the condition which killed him. Thus a man with heart disease might be killed by a blow which would not affect a sound man, but nevertheless it would be the blow, and not the heart disease, which killed him. The doctrine of proximate and remote causes has been discussed in many cases, but, after all, each case must be decided largely upon the special facts belonging to it. Ins. Co. v. Tweed, 74 U. S. 44, 52, 19 L. Ed. 65. The rule where negligence is claimed to be the cause of the injury was stated in the case of Milwaukee Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256, where it is said (page 475, 94 U. S., 24 L. Ed. 256):

"But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

We applied this rule in Butts v. Cleveland, etc., Ry. Co., 110 Fed. 329, 49 C. C. A. 69. A passenger, notified that the car he was on was to be cut from the train, started forward, and, as he was crossing to the

next car the separation took place, and as he took hold of the doorknob of this car the brakeman called out, "Look out! Look out!" whereupon, acting on the impulse of the moment, he stepped back, and fell between the cars and was hurt. This court held that it was not the cutting of the cars, nor the lack of time to get to the forward car, nor the warning given by the brakeman, that was the proximate cause of the accident, but the plaintiff's own unexpected and inconsiderate act in stepping back from a position of safety into one of danger.

Scheffer v. R. R. Co., 105 U. S. 249, 252, 26 L. Ed. 1070, grew out of a railroad collision. The passenger injured in the accident ultimately became insane and committed suicide. In a suit against the railroad company for his wrongful death the court held that it was not the collision which was the proximate cause of his death, but his own act. The case of Insurance Co. v. Tweed, 7 Wall. 44, 19 L. Ed. 65, and Milwaukee Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256, are discussed, the court reaching the conclusion (page 252, 105 U. S., 26 L. Ed. 1070):

"The suicide of Scheffer was not a result naturally and reasonably to be expected from the injury received on the train. It was not the natural and probable consequence, and could not have been foreseen in the light of circumstances attending the negligence of the officers in charge of the train. His insanity, as a cause of his final destruction, was as little the natural or probable result of the negligence of the railway officials as his suicide, and each of these are casual or unexpected causes, intervening between the act which injured him and his death."

In Insurance Co. v. Crandal, 120 U. S. 527, 7 Sup. Ct. 685, 30 L. Ed. 740, it wa_ held that a policy of accident insurance which excepted death by suicide, without qualifying the word "suicide" by the words "whether sane or insane," covered a death by hanging one's self while insane. Suicide being the intentional killing of one's self, could not be predicated of the act of an insane person, which must be regarded as involuntary, and not really his act. This policy contained a provision excepting death caused wholly or in part by bodily infirmities or disease, and the court said that:

"If insanity could be considered as coming within this clause, it would be doubtful, to say the least, whether, under the rule of the law of insurance which attributes an injury or loss to its proximate cause only, and in view of the decisions in similar cases, the insanity of the assured, or anything but the act of hanging himself, could be held to be the cause of his death;" citing cases.

In Manufacturers' Accident, etc., Co. v. Dorgan, 58 Fed. 945, 7 C. C. A. 581, 22 L. R. A. 620, the question of proximate cause came before this court. The insured was found submerged, face down, in a brook, dead. It was claimed he had fallen into the brook in consequence of a disease, which thus indirectly caused his death. Respecting this claim, Judge Taft, who delivered the opinion, said (page 954, 58 Fed., page 590, 7 C. C. A., 22 L. R. A. 620):

"We are of the opinion that in the legal sense, and within the meaning of the last clause, if the deceased suffered death by drowning, no matter what was the cause of his falling into the water, whether disease or a slipping, the drowning in such case would be the proximate and sole cause of the disability or death, unless it appeared that death would have been the result even had

there been no water at hand to fall into. The disease would be but the condition; the drowning would be the moving, sole, and proximate cause."

The question whether a cause was proximate or remote has frequently been before the courts in cases of marine insurance. The holdings in a number of these cases are stated in Broom's Legal Maxims, p. 216. We quote a few which seem pertinent:

"Where a ship meets with sea damage, which checks her rate of sailing, so that she is taken by an enemy, from whom she would otherwise have escaped, the loss is to be ascribed to the capture, not to the sea damage. So the underwriters are liable for a loss arising immediately from a peril of the sea, or from fire, but remotely from the negligence of the master and mariners; and where a ship insured against the perils of the sea was injured by the negligent loading of her cargo by the natives on the coast of Africa, and, being pronounced unseaworthy, was run ashore in order to prevent her from sinking and to save the cargo, the court held that the rule, 'Causa proxima non remota spectatur,' must be applied, and that the immediate cause of loss, viz., the stranding, was a peril of the sea."

To return to the case at bar. It is not charged in the declaration that the officers willfully exposed Jarnagin to the danger of being murdered. Such averment might amount to a charge of complicity in the murder. The extent of the allegation is that they negligently permitted certain parties to murder him; in other words, failed to protect him where protection was (as alleged) a legal duty. In the absence of specific averments to that effect, it cannot be assumed that the failure of officers to protect a prisoner would naturally and probably result in his murder. It must be presumed that in this country the law, as ordinarily enforced, is adequate to protect life. It cannot be assumed that it is necessary for a man to place or keep himself in custody and under the protection of officers in order to secure his personal safety. Nor can it be assumed that a citizen must carry weapons in order to safeguard his person. From the fact, therefore, that a man is unarmed, and not protected by officers, it cannot reasonably and naturally be anticipated that he will become the victim of murder. If he is murdered while unarmed and unprotected, the act of his murderers, and not the failure of the law to protect him, must be regarded as the proximate cause of his death. The negligence of the officers which exposed Jarnagin to danger was no more the proximate cause of his death than was, in Scheffer's Case, the collision which injured him, whereby he became insane and killed himself; or, in Dorgan's Case, the temporary seizure, which caused him to fall into the brook where he was drowned. In each case "a casual and unexpected cause," not the natural and probable result of the one relied on, intervened to occasion death.

The judgment of the lower court is affirmed.