[Civ. No. 27. Fourth Appellate District.—June 7, 1930.]

JENNIE M. FOX, Respondent, v. FEDERAL CASUALTY COMPANY OF DETROIT, MICHIGAN (a Corporation), Appellant.

Everts, Ewing, Wild & Everts, Dan F. Conway and C. M. Ozias for Appellant.

B. M. Benson for Respondent.

MARKS, Acting P. J.—Respondent Jennie M. Fox is the widow of J. L. Fox, deceased, who died from the effects of a gunshot wound inflicted on December 1, 1928, by L. M. Cardwell, who was at the time constable of Chowchilla township, in the county of Madera, state of California. Appellant had issued to J. L. Fox a policy of health and accident insurance whereby it insured him "against the effects resulting directly and exclusively of all other causes, from bodily injury sustained during the life of this policy solely through external, violent and accidental means." Upon a trial of the case before the court without a jury, judgment was rendered in favor of respondent, who was the beneficiary named in the policy, and against appellant for the principal sum pro-

vided in the policy as the benefit to be paid in case of the accidental death of the insured.

The appellant presents several grounds upon which it relies for a reversal of the judgment, but we only need to consider one of them.

The policy contained the following provision:

"This policy does not cover death, disability or loss of the insured caused by or resulting directly or indirectly from . . . injuries *intentionally* inflicted upon the insured by any person other than himself (assaults by burglars or robbers excepted)."

Appellant maintains that this provision of the insurance policy releases it from liability. Under the facts and circumstances appearing in this case we agree with it.

The evidence before us shows that on December 1, 1928, L. M. Cardwell, accompanied by ten or more citizens, found the deceased walking across a field. Cardwell was of the opinion that the deceased was insane and evidently he had assembled the posse to take him into custody, although no warrant had been issued for this purpose. The deceased was armed with a piece of a grapestake about three feet long and an iron pipe about two feet long. The members of the posse surrounded him and he threw the grapestake at one of them. He then grasped the iron pipe in both hands and, raising it over his right shoulder, advanced toward Cardwell, threatening to kill him. Cardwell fired one shot from his pistol into the air, and, as the deceased continued his advance, fired the second into his body, which resulted in instant death. The last shot was fired when deceased was eight or more feet away from Cardwell. Cardwell testified that he "shot to stop him then, whether it killed him or not."

It is the well-established rule, supported by decisions in practically all of the states of the Union, that a recovery cannot be had under the circumstances of this case. The case of *Matson* v. *Travelers' Ins. Co.*, 93 Me. 469 [74 Am. St. Rep. 368, 45 Atl. 518], is typical of a general rule governing these cases. In this case it was held as follows:

"The plaintiff was the holder of an accident insurance policy issued by the defendant corporation, which entitled him to receive, if disabled by bodily injuries sustained through 'external, violent, and accidental means,' a certain

sum of money each week while the disability continued. The policy contained a clause which provided that the insurance should not cover, among other things, 'intentional injuries inflicted by the insured or by any other person, except burglars or robbers.'

"During the life of the policy the plaintiff was violently assaulted by another person, not a robber or burglar, who attempted to strike him upon the head with a stick, but the plaintiff, to protect himself, put up his arm, and received the blow thereon, and thereby sustained the injury which he claims entitles him to recover of the company. The plaintiff was without fault in the affair, and the assault upon him is admitted to have been intentional. These facts appear in the agreed statement of facts upon which the case comes to this court.

"Under these circumstances, is the plaintiff entitled to recover? We think not. Were it not for the provision that the insurance should not cover injuries intentionally inflicted by another, it might perhaps be said, as some courts have held, that, as to the insured, the injury, for which he was in no way responsible, was an accident, an unforeseen event, a casualty.

"But here the injury was sustained in one of the very ways which the policy provided should not be covered by the insurance—intentional injuries inflicted by another. An act may be intentional, while its result may be unforeseen and unintentional, and therefore accidental, within the meaning of the contract of insurance. But that is not so in this case. Here the act was intentional. It was directed against the insured, and direct injury to the insured was intended.

"All the cases that have been called to our attention, in which a similar provision of an accident insurance policy has been considered, hold that where the injuries sustained by the insured were intentionally inflicted by another, and where the intentional acts of another that caused the injury were aimed at the insured, there could be no recovery. (*Insurance Co.* v. *McConkey,* 127 U. S. 661 [32 L. Ed. 308, 8 Sup. Ct. Rep. 1360] ; *Hutchcraft's Exr.* v. *Insurance Co.,* 87 Ky. 300 [12 Am. St. Rep. 484, 8 S. W. 570] ; *Utter* v. *Insurance Co.,* 65 Mich. 545 [8 Am. St. Rep. 913, 32 N. W. 812].)"

To the same effect are the cases of *Jarnagin* v. *Travelers' Protective Assn. of America,* 133 Fed. 892 [68 L. R. A. 499] ; ·

*Order of Commercial Travelers of America* v. *Williams,* 11 Fed. (2d) 577 [46 A. L. R. 1081]; *Butero* v. *Travelers' Acc. Ins. Co.,* 96 Wis. 536 [65 Am. St. Rep. 61, 71 N. W. 811].

In the case before us the insurance policy provides that the insurance carrier shall not be liable where either death, disability or loss of the insured was caused by injuries intentionally inflicted upon him. Under the language of this policy we do not think it is material whether or not Cardwell inflicted the injury with the intention of actually killing the deceased at the time he fired the fatal shot, or of merely wounding him. The intention to shoot deceased was sufficient, because this intention caused the disability which resulted in the death. The language of this policy brings the case squarely within the rule announced in the case of *Matson* v. *Travelers' Ins. Co., supra,* and the other cases we have cited. The case of *Fischer* v. *Travelers' Ins. Co.,* 77 Cal. 246 [1 L. R. A. 572, 19 Pac. 425], is directly in point. In that case the insurance policy provided that the insurance carrier should not be liable if death or injury for which indemnity was sought "may have been caused by . . . intentional injuries inflicted by the insured or any other person." Another person intentionally shot the insured through the body with a pistol and he died as a result. The Supreme Court held that there could be no recovery under the terms of the policy. The conclusions in that case find approval in the reasoning used in the cases of *Jenkin* v. *Pacific Mutual Life Ins. Co.,* 131 Cal. 121 [63 Pac. 180]; *Mar Shee* v. *Maryland Assur. Corp.,* 190 Cal. 1 [210 Pac. 269]; *Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421 [26 A. L. R. 123, 213 Pac. 42].

In this case, it appearing from the undisputed evidence that J. L. Fox came to his death from a gunshot wound intentionally inflicted upon him by L. M. Cardwell, and that the contract of insurance did not impose any liability for an injury or death occurring under such circumstances, there can be no recovery by the beneficiary named in the policy.

Judgment reversed.

Barnard, J., concurred.