## SOUTHERN SURETY CO. OF NEW YORK v. EVA MADISON.

Western Section. October 23, 1931.

Petition for Certiorari denied by Supreme Court, January 23, 1932.

Winchester & Bearman, of Memphis, for plaintiff in error.
L. H. Graves, of Memphis, for defendant in error.

OWEN, J. Eva Madison, the widow of J. M. Madison, recovered a judgment against the defendant Surety Company. Madison was

killed prior to the institution of the suit. He held a policy in defendant company for $1000. The policy was what was termed an accident policy. The policy contained the following clause:

"This policy does not cover injuries fatal or non-fatal by reason of the intentional act of any person; assaults upon the insured by any person committing or attempting to commit robbery or burglarly excepted."

The question to be determined is whether or not Madison's death was an intentional act of another person or was an accident and caused by accidental means.

At the conclusion of all the evidence there was a motion for a directed verdict which was overruled with the result that the case was submitted to a jury who returned a verdict for the plaintiff. There was a motion for a new trial which was overruled. The defendant perfected its appeal and has assigned ten errors. These errors raise two propositions, first, there is no evidence to sustain the verdict of the jury, and that the court should have granted defendant's motion for a directed verdict at the conclusion of all the proof.

Assignments nine and ten complain of the following excerpts from the court's charge:

"In this particular case, the theory of the plaintiff is that her husband, J. M. Madison, was accidentally killed by George White, another colored man, while trying to defend himself; that the said George White did not try to kill the insured, J. M. Madison, but only shot to defend himself and tried only to inflict such injuries as would prevent the insured, J. M. Madison, from injuring him and, therefore, although the shooting might have been intentional, the result of such shooting, that is the death of J. M. Madison, was accidental and unintentional. If you find from the preponderance of the evidence that this contention has been sustained, then it is your duty to find for the plaintiff."

"Gentlemen: The attorneys have just called my attention to a particular part of the charge I gave you; that the burden of proving accidental death is upon the plaintiff. I now charge you, gentlemen, that the proof in this record is that the deceased, J. M. Madison, met his death by accident, but whether that accident was by the intentional act of this George White is a question for you to determine."

The defendant insurance company relies on the following propositions of law and the following authorities in support of said proposition:

"A provision in an accident insurance policy exempting insurance company from liability for injuries intentionally inflicted

by insured or any other person, except burglars or robbers, is valid and binding on the insured and his beneficiary." Travelers Insurance Company v. M. C. Conkey, 127 U. S., 667; National Life & Accident Co. v. Hanon, 214 Ala., 663; National Life & Accident Co. v. D. Lopez, 207 S. W., 160; Fernando v. Continental Casualty Co., 210 N. W., 634; Orr v. Travelers Insurance Co., 24 So. 997; Washington v. Union Casualty Co., 91 S. W., 998; Fox v. Federal Surety Company, 289 Pac., 175.

"While general rule in the construction of insurance contracts is that an interpretation must be adopted which is most favorable to the insured, such rule is inapplicable when the words used clearly indicate the intention of the parties, and effect must be given thereto." Strother v. Business Men's Accident Assn. of America, 188 S. W., 314; Orr v. Travelers Insurance Company, 24 S. W., 997; National Life & Accident Insurance Co. v. Hanon, 214 Ala., 663.

"It is not necessary that the intent to kill exists at the time of the shooting so long as the intention to shoot exists, as the death resulting from the intentional shooting is the natural consequence following an act with a dangerous instrument, to-wit: a pistol." 48 L. R. A., 526; Strother v. Business Men's Accident Assn. of America, 188 S. W., 314; Fernando v. Continental Casualty Company, 210 N. W., 634; Union Accident Company v. Willis, 145 Pac., 812; Fox v. Federal Surety Company, 289 Pac., 175; National Life & Accident Co. v. Hanon, 214 Ala., 663.

"The burden of proof is upon the plaintiff to show from all of the evidence that the death of the insured was caused by external, violent and accidental means." Travelers Insurance Co. v. M. C. Conkey, 127 U. S., 667; Chambers v. Metropolitan Insurance Company, 136 Ark., 86.

"It is not within the meaning of the phrase 'accidental means' where the insured is either the aggressor, provokes or designs the injury which he sustains." Taliaferro v. Travelers Protective Assn., 80 Fed., 368; Prudential Casualty Co. v. Curry, 65 So. 852; Hutton v. State Accident & Surety Co., 267 Ill., 267; Clay v. State Insurance Company, 94 S. E., 289; Meister v. General Accident Insurance Company, 179 Pac., 913.

"Where one conclusion only is deducible or if all of the evidence tends to the one conclusion, the case should be taken from the jury." Virginia-Tennessee Hardware Co. v. Hodges, 126 Tenn., 370; Tennessee Central Railroad v. Morgan, 132 Tenn., 1; Tennessee Copper Co. v. Simpson, 6 Appeal cases, 536.

Counsel for the plaintiff insists that the instant case is controlled by the holding of this court in the case of Freeze v. Continental Casualty Co., 5 Tenn. App., 261, and a number of other cases cited in the Freeze case, supra, and from other jurisdictions.

Learned counsel for plaintiff also cites and relies upon the case of I. J. Scharff v. Travelers Protective Assn., Shelby Chancery, decided by this Court September term, 1930.

The sole question in the instant case is whether the deceased was accidentally killed or did he lose his life as a result of an intentional killing.

"Provisions of accident policies excluding or limiting liability in case of injuries intentionally inflicted upon the insured are generally held inapplicable where the insured is injured or killed by one who mistakes him for another person.

The evidence of the plaintiff shows that J. M. Madison, the insured, a colored man and a Baptist preacher was killed by one, George White. He left a widow, the plaintiff. He carried accident insurance with the defendant. No witnesses testified as to the killing and how it happened, except George White, who had been convicted of murder and sentenced to the state penitentiary for ten years for the killing of J. M. Madison. Madison was not at home when he was killed. The undertaker testified that Madison was shot in the back of the head about two inches from the right ear and the bullet came out about two inches from the corner of the right eye. Madison was dead at the morgue when the undertaker saw the body. Madison was forty-five or forty-six years of age. He lived with his wife at 494 Williams Street. George White's deposition was taken while he was in the state penitentiary, and he testified that he killed J. M. Madison in self-defense. He testified that Madison made a move to his pocket and pulled out his gun, "I fired the shot and killed him, he fell on the gun, and the officers found him in this position, on his gun." He further testified that he intentionally shot Madison in order to save his own life, that Madison was trying to kill the witness. Witness White, at the time of the killing was not attempting to commit robbery or burglary, that he had been tried for the murder of J. M. Madison, and that the jury had found him guilty of murder in the second degree and sentenced him to the penitentiary for ten years. On cross-examination this witness testified as follows:

"1. Please state whether or not you left town after shooting J. M. Madison? A. No.

"2. State whether or not you ever married Mary White? A. Yes.

"3. State if Mary White's real name was Josephine Mitchell? A. Yes.

"4. State if you saw a pistol on the ground by the body of J. M. Madison after you shot him? A. Yes.

"5. Please state whether or not J. M. Madison was running by you or in front of you when you shot him? A. He was coming toward me.

"6. If he was state whether or not he turned before you shot him? A. Yes he turned facing toward me.

"7. Please state whether or not you shot him in the back of his head near his right ear? A. I shot him just above his right ear.

"8. Please state whether or not in your written statement to Captain W. F. Glisson you said anything about J. M. Madison having a pistol? A. Yes.

"9. Please state whether or not J. M. Madison ever struck at you? A. No he never struck at me.

"10. Please state whether or not J. M. Madison ever laid his hand on you? A. No, sir.

"11. Please state whether or not J. M. Madison ever shot at you? A. No.

"12. Please state whether or not J. M. Madison ever cut you or attempted to cut you? A. No.

"13. Please state whether or not you shot just to wound J. M. Madison or to kill him? A. I shot him to keep him from killing me.

"14. Please state whether or not you had a tussle with J. M. Madison at the time or just before you shot him? A. No.

"15. Isn't it a fact that you did not intend to kill him? A. I was not trying to kill him.

"16. You had no intention of taking his life did you? A. No. "Witness:

| "J. E. Travis, | "George X White, |
|---|---|
| "Jas. A. Pratt. | "Signature of George White." |

The plaintiff relies upon White's cross-examination in which he states that he didn't intend to kill Madison, therefore, by this evidence it was a question for the jury—whether or not the killing was intentional or accidental.

"An accident which results in the injury or death is an injury not anticipated and not reasonably to be expected by the insured, though intentionally inflicted by another; accidental means taking place not according to the usual course of events, unexpected and unforeseen." Insurance Co. v. Bennett, 90 Tenn., 263, 16 S. W., 723.

The instant case is distinguished from the Freeze case, supra. In the Freeze case, Freeze, who carried a policy containing a clause similar to the one under consideration, was shot by one Stuart Gaston. The deceased was shot about 11:30 at night, he was a white man. He went in the back yard of Stuart Gaston, the night was dark and it was raining. Gaston's four dogs were barking in the back yard, on being awakened Gaston went to a bureau, pulled out a pistol, turned on no light, went to his back door and called out twice, "Who is there?" Receiving no response he shot twice to-

wards the place where the dogs were barking. After shooting Gaston returned to his room, lighted a lantern, went into the back yard and found the insured bending over, unable to speak. Gaston exclaimed, "Mister, why didn't you say something? I would not have shot you for anything in the world!" The insured was unable to answer. Gaston was never indicted. It was thought that the insured did not hear Gaston ask, "Who is there?" or if he answered Gaston did not hear the answer on account of the four barking dogs. Gaston shot in the dark and shot just to be shooting or to frighten the object at which the dogs were barking.

In the Scharff case, supra, Scharff sued for the loss of an eye. The defendant in the Scharff case had issued a policy covering accidents as to the insured, with an exception similar to the one relied on in the instant case. The issue was as to the injury to Scharff's eye being caused by the intentional injuries or acts inflicted by one, Drewery. In the assault by Drewery, which was made by his fist on the head of the insured, Drewery was on the insured, holding the insured's head up with his left hand so as to better strike the insured with Drewery's right hand. And while beating the insured with his right hand, one of Drewery's fingers of his left hand scratched the insured in the eye. It was held that there was no intent on the part of Drewery to put out the insured's eye, but Drewery intended to strike the insured's head with his right fist.

The general rule relative to the clause in insurance policies, similar to the one under consideration is that, "To bring injury to insured with the exception of injuries from the intentional act or another, the intention must be to commit injury as well as to do the act and must be toward the insured."

We are of the opinion that in the instant case we have the three necessary prerequisites to put the clause in effect:

(1) There must be an intention to commit an injury. George White intended to shoot the deceased.

(2) Not only the intention to commit an injury, but to do the act. White intended to and did shoot, with a deadly weapon, the deceased.

(3) It must be toward the insured. White aimed at the insured, he says, for the reason that the insured was advancing on White with a pistol, the insured having a pistol in his hand, White fired at the insured, struck him behind the right ear, killed him instantly.

And his statement on cross-examination, "that he didn't intend to kill the deceased," is a mere conclusion or opinion contrary to the physical facts and results that befell the deceased.

Some authorities have held that the murder of the insured is within the proviso, excepting from the risk, injuries or death resulting from intentional injuries inflicted by the insured or any other person. Johnson v. Travelers Insurance Co., 39 S. W., 932; Jarragin v. Travelers Protective Assn., 133 Fed., 892.

In the Jarragin case, the insured was killed by a mob while the insured was under arrest.

In Orr v. Travelers Insurance Co., 120 Ala., 647, the court held: "Where insured, being unable to gain admittance to his wife's room through the door, went into the yard near a window of the room whereupon a man who was in the room fired through the window, the bullet killing insured, the intent was held sufficient to substantiate the provision against liability for intentional injuries."

. In the case of Butero v. Travelers' Acc. Ins. Co., 96 Wis., 536, cited above: "Where it appeared that insured was shot by a person unknown, the evidence showing that the murderer knew his victim when he fired, and that he fired with intent to kill him," the intent was held sufficient to substantiate the provision against liability for intentional injuries.

In the case of Fernando v. Continental Casualty Company, decided by the Supreme Court of Minnesota, 210 N. W., 634, said the Supreme Court in passing on a clause similar to the one in the instant case. There was a directed verdict in the lower Court for the defendant.

"The only witness to the shooting was a woman with whom Boone had been friendly. She testifies that Boone was at her home on the morning of the shooting and left his revolver in a trunk in the front room; that he returned shortly before noon; that he demanded money; that she told him she had none; that a quarrel and a fight followed; that he hit her and started for the trunk; that she started also; and that she got the gun and shot him. Incidentally it appears that she was indicted for murder and was sentenced upon a plea of guilty of manslaughter in the second degree. Her plea does not bind the beneficiary, but her testimony is reasonable and uncontradicted by witnesses or by circumstances. There may be inaccuracies of detail, but she intended to shoot Boone. Whether she intended to kill, and her plea indicates that she did not, is not important. Boone's death was the result of an intentional act within the policy. There could be but one verdict and the Court was right in its ruling."

We hold that the prevailing rule applicable to insurance policies containing the clause that is now before the Court is that: "It is not necessary that an intent to inflict the particular injury which results ought to exist in order to bring it within the provisions such

664

as those under discussion." Fisher v. Travelers Insurance Co., 77, 276, 48 L. R. A., 526.

The undisputed evidence in the instant case shows that George White intended to shoot the insured, that he did shoot the insured, that he killed the insured, that George White was convicted of murder of the insured, and we are of the opinion that the defendant company is not liable under these facts, and that the motion for a directed verdict should have been sustained.

It results that the assignments of error are sustained, that there is no evidence to sustain this verdict, and that the Court should have granted a directed verdict at the conclusion of all the evidence. The defendant is not liable as we view the case, the judgment of the lower Court is reversed, and the plaintiff's suit is dismissed at her cost.

Heiskell and Senter, JJ., concur.